**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL S. KOVACH,

Defendant-Appellant.

No. 99-4112

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 98-CR-558-C)

Dixon D. Hindley, of Salt Lake City, Utah, for the appellant.

Mark Vincent, Assistant United States Attorney (Paul M. Warner, United States Attorney, and Leshia M. Lee-Dixon, Assistant United States Attorney, on the brief), of Salt Lake City, Utah, for the appellee.

Before **BRISCOE**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Defendant Michael Kovach appeals his conviction for uttering and possessing counterfeit securities in violation of 18 U.S.C. § 513(a). We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

In September 1998, the United States Postal Inspection Service (USPIS) began investigating the break-in of residential and business mailboxes in the south end of the Salt Lake Valley. A representative from a doctor's office in Murray, Utah, contacted USPIS and reported that a check in the amount of $1,611.96 sent to the doctor's office by the IHC Health Plan had been stolen and negotiated at a local bank. The check was issued out of the Salt Lake City IHC office. The USPIS determined that four counterfeit copies of the check had been presented at separate Key Bank branches. In each instance, the check was made payable to Michael S. Kovach and negotiated with a Utah identification number belonging to Kovach. The USPIS also determined that Kovach's fingerprints were on three of the four counterfeit checks.

A criminal complaint was filed in federal district court charging Kovach in one count with knowingly uttering and possessing four counterfeit securities of an organization, IHC Health Plan, with intent to deceive another person and an organization in violation of 18 U.S.C. § 513(a). Kovach was subsequently indicted on the same charge.

Kovach moved to dismiss the indictment for lack of jurisdiction, arguing "[t]he indictment fail[ed] to show that the alleged prohibited conduct had a

2

sufficient connection with or effect on interstate commerce to invoke federal jurisdiction." ROA, Vol. I, Doc. 22. After a hearing, the district court denied the motion and scheduled the case for trial. Kovach entered a conditional plea of guilty to the single count charged in the indictment, specifically reserving the right to appeal the "issues raised in his motion to dismiss." Id., Doc. 45, at 4. In the written plea agreement, the parties stipulated that (1) Kovach negotiated the four counterfeit checks from IHC Health Plan; (2) IHC Health Plan was a "non-profit corporation which handle[d] the insurance aspects of medical services offered to those individuals who carr[ied] IHC Health Plan Insurance"; (3) "[p]hysicians who participate[d] in the IHC plan [we]re in Idaho and Utah"; and (4) Key Bank was a national banking organization with offices throughout the United States. Id. at 4-5. Kovach was sentenced to a term of imprisonment of 16 months, followed by a 36-month period of supervised release.

II.

*Constitutionality of 18 U.S.C. § 513(a)*

Kovach argues that 18 U.S.C. § 513(a) is unconstitutional in light of United States v. Lopez, 514 U.S. 549 (1995), because it fails to prohibit conduct affecting interstate commerce. The district court rejected Kovach's argument. Because the question is a purely legal one, we apply a de novo standard of review. See United States v. Boyd, 149 F.3d 1062, 1065 (10th Cir. 1998), cert. denied,

3

119 S. Ct. 2024 (1999).

In Lopez, the Supreme Court struck down as unconstitutional the Gun Free School Zones Act (GFSZA), 18 U.S.C. § 922(q)(1)(a), a statute which forbade "'any individual knowingly to possess a firearm at a place [he] kn[ew] . . . [wa]s a school zone.'" 514 U.S. at 551 (quoting 18 U.S.C. § 922(q)(1)(A)). In reaching this conclusion, the Court emphasized that Congress' authority under the Commerce Clause extended to only three categories of activity: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558-59. Because the GFSZA did not require proof of any of these three interstate jurisdictional nexuses, the Court held that the statute was an unconstitutional exercise of Congress' Commerce Clause authority. Id. at 559.

The question here is whether the statute under which Kovach was charged, 18 U.S.C. § 513(a), requires proof of at least one of the three interstate jurisdictional nexuses identified in Lopez. The statute provides in pertinent part:

> Whoever makes, utters or possesses a counterfeited security of . . . an organization, or whoever makes, utters or possesses a forged security of . . . an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

4

18 U.S.C. § 513(a).  Further, 18 U.S.C. § 513(c) provides:

> For purposes of this section--
> . . .
> (4) the term "organization" means a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons which operates in or the activities of which affect interstate or foreign commerce.

In light of this definition, we have little trouble concluding that § 513(a) falls within the third category of activity outlined in <u>Lopez</u>, i.e., "those activities that substantially affect interstate commerce."  To prove a violation of section 513(a), the government must demonstrate that a defendant uttered or possessed a counterfeited or forged security of a legal entity "which operates in or the activities of which affect interstate or foreign commerce."  In other words, the statute contains a jurisdictional element which ensures, through a case-by-case inquiry, that the crime in question involves the forging or counterfeiting of securities of an economic enterprise engaged in interstate commerce.  See <u>Lopez</u>, 514 U.S. at 561.  Because such securities are closely linked to the operation of such "organizations," criminal activity involving those securities necessarily affects interstate commerce.

Although we believe the amount at issue in this case (approximately $6,400) was significant, our conclusion would be the same even if the amount were considered *de minimis*.  The point is that criminal activity violating § 513(a),

5

when considered in the aggregate, clearly has a substantial effect on interstate commerce.  See United States v. Ables, 167 F.3d 1021, 1029 (6th Cir.) (concluding that, even after Lopez, government need prove only that particular transaction at issue had a *de minimis* effect on interstate commerce), cert. denied, 119 S. Ct. 2378 (1999); United States v. Ripinsky, 109 F.3d 1436, 1444 (9th Cir. 1997) (holding that jurisdictional element of 18 U.S.C. § 1957 was satisfied if each individual financial transaction "ha[d] a minimal effect on interstate commerce that, through repetition by others similarly situated, could have a substantial effect on interstate commerce"); United States v. Leslie, 103 F.3d 1093, 1100 (2d Cir. 1997) (concluding that federal statute prohibiting laundering of monetary instruments regulated activities which, in the aggregate, had a substantial effect on interstate commerce); United States v. Bolton, 68 F.3d 396, 399 (10th Cir. 1995) (concluding that, even after Lopez, the government need show only a *de minimis* effect on interstate commerce to support a Hobbs Act conviction).  Indeed, Congress concluded as much when it enacted § 513 in 1984. See S. Rep. No. 98-225, at 653 (1983) (noting that the purpose of § 513 was to "combat widespread fraud schemes involving the use of counterfeit . . . corporate securities" that have "a serious detrimental effect on interstate commerce").

For these reasons, we conclude the statute represents a valid exercise of

6

Congress' Commerce Clause authority.[1]  Thus, the fact that the statute may impact an area traditionally reserved to the states is irrelevant.  See Gregory v. Ashcroft, 501 U.S. 452, 460 (1991) ("As long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States.  Congress may legislate in areas traditionally regulated by the States.").

*Sufficiency of indictment*

Kovach contends the indictment filed against him was insufficient and should have been dismissed because it failed to adequately allege an interstate commerce nexus.  Questions regarding the sufficiency of an indictment are reviewed by this court de novo.  United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997).

To pass constitutional muster, an indictment must contain all the essential elements of the charged offense.  See United States v. Brown, 995 F.2d 1493, 1505 (10th Cir. 1993).  This rule derives from both the Fifth and Sixth Amendments.  See United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998); United States v. Schramm, 75 F.3d 156, 163 (3d Cir. 1996).  In particular, the rule

---

[1]  The statute also criminalizes the possession or utterance of a counterfeited or forged security of a State or political subdivision thereof.  Because Kovach was not charged under this portion of the statute, we have not analyzed whether that portion represents a constitutional exercise of Congress' Commerce Clause authority.

ensures that a grand jury has found probable cause to support all the necessary elements of the crime. Fern, 155 F.3d at 1325. Further, the rule enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). Finally, the rule helps ensure that a defendant receives fair notice of the charges against which he must defend. Id. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Id. (quoting United States v. Carll, 105 U.S. 611, 612 (1882)).

The indictment against Kovach charged as follows:

> On or about September 22, 1998, in the Central Division of the District of Utah, MICHAEL S. KOVACH, the defendant herein, did knowingly utter and possess four (4) counterfeit securities of an organization, to wit: IHC Health Plan account no. 124000737, check no. 860632, with the intent to deceive another person and an organization; all in violation of 18 U.S.C. § 513(a).

ROA, Vol. I, Doc. 10. Because the indictment did not directly allege a connection between IHC Health Plan and interstate commerce, the critical question is whether its use of the statutory term "organization," and its description of IHC Health Plan as an "organization," are sufficient to satisfy the necessary jurisdictional nexus.

In United States v. Wicks, 187 F.3d 426 (4th Cir. 1999), a case involving

8

strikingly similar facts and arguments[2], the Fourth Circuit held that the term "organization," as used in § 513(a), is a term of art defined to refer only to entities that operate in or affect interstate or foreign commerce.  Id. at 428.  Thus, the Fourth Circuit held, the use of this term of art in an indictment charging a violation of § 513(a) is adequate, without more, to charge the interstate commerce element.  Id.  In other words, the court held, an indictment need not also include the component parts of this term of art (i.e., that the organization is one operating in or affecting interstate or foreign commerce).  Id.

We agree with the holding in Wicks.  Section 513 defines the term "organization" to mean "a legal entity, other than a government, established or organized for any purpose, . . . which operates in or the activities of which affect interstate or foreign commerce."  18 U.S.C. § 513(c)(4).  This definition, which is narrower than the common definition of the word "organization," "is not merely a generic or descriptive term, but a legal term of art" which expressly incorporates the interstate commerce element of the statute.  Hamling, 418 U.S. at 118.  Because this definition is applicable to all indictments charging a violation of §

---

2  The defendant in  Wicks  was indicted on two counts of possessing forged securities in violation of § 513(a).  Like the indictment at issue here, the indictment in  Wicks  simply alleged that the defendant, "with intent to deceive another person, did possess a forged security of an organization, that is, a check purporting to be a genuine check of Comdata Network, Inc., in the amount of $3,000.00."  187 F.3d at 428.

513(a), its use is "sufficiently definite in legal meaning to give a defendant notice of the charge against him," id., even if the "various component parts of the [statutory] definition of" organization are not specifically alleged in the indictment. Id. at 119.

We conclude the indictment filed against Kovach was constitutionally sufficient. By describing IHC Health Plan as an "organization," the indictment effectively alleged the interstate commerce element, even though it did not parrot the component parts of the statutory definition. In other words, the indictment placed Kovach on notice that he uttered and possessed counterfeit securities of a specifically named entity that operated in or affected interstate or foreign commerce. The indictment fairly informed Kovach of the charge against which he had to defend and enabled him to assert a double jeopardy defense to any future prosecution for the same offense.

*Effect on interstate commerce*

Finally, Kovach argues that his conviction must be reversed because his conduct did not affect interstate commerce. In particular, Kovach points out that "[a]ll of [his] conduct was purely local and occurred wholly within the state of Utah," and "[a]ll persons, things and organizations involved were at all times located within the state of Utah." Kovach's Opening Brief, at 5.

10

The initial problem with Kovach's argument is that it was never ruled upon by the district court. Although Kovach attempted to argue at the hearing on his motion to dismiss that the government could not prove his conduct affected interstate commerce, the district court specifically refused to reach the issue, indicating it was a matter of proof for trial. ROA, Vol. II, at 2 ("What I don't want you to argue because it's just something I don't think I can think about is that they couldn't show it, because I have to wait until trial."); id. at 3 ("It's just–what I don't think–I don't think you'd be spending your time wisely doing, . . . would be arguing that the government can't show an interstate nexus, because it seems to me that's something that we'll see at trial."); id. at 12 ("As far as whether the government can establish the necessary interstate nexus, that's a matter of proof. And I can tell you, Mr. Hindley, I know you'll be watching for it if we go to trial, and I will too."). Absent extraordinary circumstances, this court will not consider an issue on appeal that was not decided first in the district court. Pell v. Azar Nut Co., 711 F.2d 949, 950 (10th Cir. 1983) (citing Singleton v. Wulff, 428 U.S. 106, 120 (1976)).

Even assuming, *arguendo*, that Kovach has demonstrated extraordinary circumstances justifying appellate review of the issue, it is apparent, under the stipulated facts, that Kovach's conduct satisfied the necessary interstate nexus. In particular, Kovach stipulated that IHC Health Plan, the "organization" whose

11

check was counterfeited, regularly made payments to Plan physicians in both Utah and Idaho. Thus, Kovach effectively conceded that IHC Health Plan was an entity that operated in interstate commerce by making payments to physicians in Utah and Idaho for health care services performed in those states.

## III.

The judgment of the district court is AFFIRMED.