**UNITED STATES of America,**

v.

**Emmanuel HANCOCK, a/k/a "Slim," Defendant.**

**No. 00 CR. 1166 DLC.**

United States District Court, S.D. New York.

Feb. 27, 2001.

Anirudh Bansal, Lisa Baroni, United States Attorney's Office, New York, NY, for U.S.

Lawrence Feitell, New York, NY, for Emmanuel Hancock.

## OPINION AND ORDER

COTE, District Judge.

Defendant Emmanuel Hancock ("Hancock") is charged with possessing and providing a counterfeit New Jersey State certificate of title to an automobile, in violation of 18 U.S.C. § 513(a) ("Section 513(a)"). Count Three of the Government's Superceding Indictment charges that:

> From in or about May 2000 up to and including on or about July 26, 2000, EM-

ANUEL HANCOCK, a/k/a "Slim," the defendant, unlawfully, wilfully and knowingly did make, utter and possess a counterfeited security of a State and a political subdivision thereof, with intent to deceive another person, organization and government, to wit, a counterfeited New Jersey automobile certificate of title for a Toyota Landcruiser automobile.

In what appears to be the first post-*Lopez* challenge to the portion of Section 513(a) at issue here, the defendant moves to dismiss the Superceding Indictment both because Section 513(a) violates the Commerce Clause in Article I of the United States Constitution and because the Indictment does not allege that Hancock's conduct affected interstate commerce. Section 513(a), in its entirety, provides:

> Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

18 U.S.C. § 513(a). The defendant's motion is denied for the reasons that follow.

## DISCUSSION

### A. Constitutionality of 18 U.S.C. § 513(a)

Defendant urges that the portion of Section 513(a) under which he is indicted exceeds Congress' powers under the Commerce Clause and is, therefore, unconstitutional. To declare a statute unconstitutional there must be "a plain showing that Congress exceeded its constitutional bounds." *United States v. Morrison,* 529

U.S. 598, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000). The Commerce Clause empowers Congress to "regulate Commerce ... among the several states." U.S. Const., Art. I, § 8, cl. 3. In order to determine whether a statute violates the Commerce Clause, a court must first inquire " 'whether a rational basis existed for concluding that [the] regulated activity sufficiently affect[s] interstate commerce,' " and, if so, then consider " 'whether the means chosen by Congress [are] reasonably adapted to the end permitted by the Constitution.' " *United States v. Franklyn,* 157 F.3d 90, 93 (2d Cir.1998) (quoting *United States v. Lopez,* 514 U.S. 549, 557, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

In *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court described three broad categories of activity that Congress is authorized to regulate under its Commerce Clause power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, *i.e.,* those activities that substantially affect interstate commerce." *Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (citation omitted). *See also United States v. Santiago,* 238 F.3d 213, 216 (2d Cir.2001) (per curiam); *United States v. Han,* 230 F.3d 560, 562 (2d Cir.2000). Section 513(a) does not fall within either the first or second *Lopez* categories, in that it is neither a regulation of the use of the channels of interstate commerce nor a regulation of the instrumentalities of interstate commerce.[1] The issue, then, is whether Sec-

1. The Government argues that Section 513(a) is a regulation of instrumentalities of interstate commerce because the indictment concerns the counterfeiting of a certificate of title for an automobile and automobiles are instrumentalities of interstate commerce. In the

first instance, the statute covers all State securities, not just State certificates of title to automobiles. Secondly, it is not entirely clear whether certificates of title for automobiles share the characteristic of automobiles that make the automobiles instrumentalities of in-

tion 513(a)'s regulation of the possession of counterfeit State securities concerns activity that substantially affects interstate commerce.

■ In *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the Supreme Court provided a framework for understanding whether a law regulates an activity that has a substantial effect on interstate commerce. The Court identified four factors relevant to this determination: (1) whether the activity in question is "some sort of economic endeavor"; (2) whether the statute contains a jurisdictional element that requires the activity to affect interstate commerce; (3) whether the legislative history includes "express congressional findings regarding the effects upon interstate commerce" of the activity; and (4) the attenuation of the link between the regulated activity and a substantial effect on interstate commerce.[2] *Id.* at 1750–51.

### 1. "Some sort of economic endeavor"

The first factor in *Morrison* requires the court to consider whether the regulated activity involves "some sort of economic endeavor." *Id.* at 1750 (citing *Lopez*, 514 U.S. at 559–60, 115 S.Ct. 1624). When the activity at issue is entirely intrastate, the analysis of this first factor is determinative: the Commerce Clause will only permit regulation of intrastate activity to the extent the "activity is economic in nature."

terstate commerce: that they are "indispensable to the interstate movement of persons and goods," *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir.1998), or that their "purpose" is "transportation," *Kowalczyk v. United States*, 936 F.Supp. 1127, 1144 (E.D.N.Y. 1996).

In any event, the constitutionality of Section 513(a) is not determined on the basis of its application in a particular case. The Government relies on *United States v. Sage*, 92 F.3d 101, 106 (2d Cir.1996), which noted, in the course of addressing a Commerce Clause challenge to a federal statute, that "[i]n order to succeed in a facial challenge to [a statute, the defendant] must show that no set of circumstances exists under which the [statute] would be valid." (Citations omitted.) The

*Id.* at 1751. *Morrison* instructs that what constitutes an "economic enterprise" may be broadly defined. *Id.* at 1749–50.

Section 513 defines "security" as "an instrument evidencing ownership of goods, wares, or merchandise." 18 U.S.C. § 513(c)(3)(B). Ownership of such property, and proof of such ownership through possession of a security, necessarily constitute economic activity. Section 513(a)'s prohibition on the making, uttering, or possession of counterfeit securities that evidence the ownership of goods regulates economic activity, namely, the purchase and sale of stolen goods. *Cf. Lopez*, 514 U.S. at 561, 115 S.Ct. 1624 (possession of a gun in a school zone "has nothing to do with 'commerce' or any sort of economic enterprise").

### 2. Jurisdictional Element

The second *Morrison* factor requires a court to consider whether the statute includes a jurisdictional requirement that establishes a connection to interstate commerce. A jurisdictional element ensures, "through case-by-case inquiry," that the activity at issue actually does affect interstate commerce. *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624. Such an element limits a statute's reach " 'to a discrete set of [activities] that have an explicit connection with or effect on interstate commerce.' " *San-*

reasoning in *Sage* may have been undermined, however, by the Supreme Court's opinions in *Lopez* and *Morrison*, neither of which used such an analysis.

**2.** The Sixth Circuit has described the fourth factor in *Morrison*—the nature of the link between the regulated activity and interstate commerce—as necessarily based upon congressional findings. *See United States v. Corp*, 236 F.3d 325, 332 (6th Cir.2001). The Third and Fifth Circuits describe the fourth *Morrison* factor to concern only the nature of the link between the regulated activity and interstate commerce. *See United States v. Gregg*, 226 F.3d 253, 262 (3d Cir.2000); *United States v. Kallestad*, 236 F.3d 225, 229 (5th Cir.2000).

*tiago,* 238 F.3d at 216 (quoting *Morrison,* 120 S.Ct. at 1751).

The two Second Circuit cases that have addressed post-*Morrison* Commerce Clause challenges to criminal statutes have concerned statutes that include a jurisdictional element. In each case, the Second Circuit concluded, with little need for extended analysis, that the statute was constitutional. *See Santiago,* 238 F.3d at 216 (18 U.S.C. § 922(g)(1)); *United States v. Feliciano,* 223 F.3d 102, 119 (2d Cir.2000) (18 U.S.C. § 1959).

The portion of Section 513(a) under which Hancock was indicted—which concerns a counterfeited security "of a State or a political subdivision"—contains no comparable jurisdictional element. Another portion of Section 513(a), however, does. In an opinion issued before *Morrison* but after *Lopez,* the Tenth Circuit upheld the constitutionality of that portion of Section 513(a) which prohibits the possession or utterance of a counterfeit security of "an organization," on the ground that the statute's definition of "organization" requires that the organization's activities affect interstate commerce. *United States v. Kovach,* 208 F.3d 1215, 1217 (10th Cir.2000). Specifically, the statute provides that the term "organization" means

> a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons *which operates in or the activities of which affect interstate or foreign commerce.*

18 U.S.C. § 513(c) (emphasis supplied). Given this definition, the Tenth Circuit reasoned that, because "securities are closely linked to the operation of such 'organizations,'" criminal activity involving the securities must substantially affect interstate commerce. *Kovach,* 208 F.3d at 1217. *See also United States v. Wicks,* 187 F.3d 426, 428 (4th Cir.1999) (indictment sufficiently charged interstate commerce

element by charging the possession of forged securities of an organization). *Cf. United States v. Barone,* 71 F.3d 1442, 1446 (9th Cir.1995) (shell corporations are not "organizations" within the meaning of Section 513(a) since the activities of a shell do not affect interstate commerce).

Hancock argues that the portion of the statute under which he is charged is unconstitutional because the statute's definition of a "State," unlike its definition of an "organization," does not include a jurisdictional requirement that the State be involved in interstate commerce. It requires no statutory definition, however, to narrow the statute's reach to only those States that "operate in" or conduct activities "which affect interstate or foreign commerce." 18 U.S.C. § 513(c). *All* States are involved in interstate commerce to the extent required by the statute's definition of "organization." Consequently, if the reasoning applied in *Kovach* is sufficient to find the statute constitutional, then the absence of a jurisdictional requirement is of little moment. Put another way, the regulation of State securities would be constitutional under the reasoning employed in *Kovach* because (1) every State operates in interstate commerce, (2) a State's securities are "closely linked" to the operation of a State and, therefore, (3) criminal activity involving State securities substantially affects interstate commerce. It merits emphasis, however, that this reasoning focuses not on the connection of the regulated activity to interstate commerce, but on the connection of the entity affected by that regulated activity to interstate commerce.

### 3. "Express Congressional findings"

The third factor described in *Morrison* requires courts to consider whether legislative findings regarding the impact of the regulated activity on interstate commerce exist. In this regard, a court will consider "even congressional committee findings." *Lopez,* 514 U.S. at 562, 115 S.Ct. 1624. Although "'Congress normally is not re-

quired to make formal findings as to the substantial burdens that an activity has on interstate commerce,'" *United States v. Franklyn*, 157 F.3d 90, 93 (2d Cir.1998) (quoting *Lopez*, 514 U.S. at 562, 115 S.Ct. 1624), such findings "may 'enable [a court] to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce, even though no such substantial effect [is] visible to the naked eye,'" *Morrison*, 120 S.Ct. at 1751 (quoting *Lopez*, 514 U.S. at 563, 115 S.Ct. 1624). *Morrison* emphasizes, however, that whether an activity substantially affects interstate commerce "'is ultimately a judicial rather than a legislative question, and can be settled finally only by th[e] Court.'" *Id.* (quoting *Lopez*, 514 U.S. at 557 n. 2, 115 S.Ct. 1624).

The Comprehensive Crime Control Act of 1984, through which Section 513(a) was passed into law, contains no express findings regarding the effects of the counterfeiting or forgery of State securities on interstate commerce. The only legislative history cited by the Government or found by the Court concerning Section 513(a) is a report by the Senate Committee on the Judiciary that accompanied passage of the statute and which states the following regarding State and organizational securities:

> [p]resent Federal law is inadequate to combat widespread fraud schemes involving the use of counterfeit State and corporate securities. As was first documented several years ago in hearings before the Senate Permanent Subcommittee on Investigations, *the use of these securities* as collateral for loans and other illegal purposes is widespread and *has a serious detrimental effect on interstate commerce.* Moreover, these crimes commonly reach across State borders, and thus local officials are generally unable to cope with them.

S.Rep. No. 98–225, 98th Cong., 2d Sess. at 371 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3512 (emphasis supplied).

The portion of the 1973 hearings held before the Senate Permanent Subcommittee on Investigations that are referenced in the Senate Report evidence a concern with world-wide schemes involving forged and counterfeited corporate securities. *See Organized Crime; Securities Thefts and Frauds, Hearings Before the Permanent Subcommittee on Investigations of the Committee on Government Operations*, 93rd Congress 123–36 (1973) (statement of Philip R. Manuel, Investigator, Permanent Subcommittee on Investigations). As Mr. Manuel testified in 1973, forged and counterfeited securities are of concern because they are used in "worldwide schemes to infiltrate and defraud legitimate businessmen and financial institutions by the use of spurious paper concealed in fraudulent financial statements and balance sheets." *Id.* at 125. Mr. Manuel agreed with Senator Henry M. Jackson, Chairman of the Committee, that the people engaging in this activity generally have "a base overseas," and that "[w]ithout overseas connections and without the overseas laundering process, much of [these activities] could not be accomplished." *Id.* at 133. Moreover, Mr. Manuel argued that "local law enforcement has been ineffective in this type of crime because of the well planned nature of the swindler in laying the groundwork for his companies," and that "[m]ost of this type of crime ... is interstate in nature." *Id.* at 134. This legislative history, while not extensive, nonetheless reflects that Congress explicitly considered in its passage of Section 513(a) the impact of the possession of counterfeit State securities on interstate and international commerce.

**4. Link Between the Regulated Activity and Interstate Commerce**

*Morrison* finally requires that the link between the regulated activity and a substantial effect on interstate commerce not be too attenuated. *Morrison*, 120 S.Ct. at 1751. If the link is too attenuated, "Congress might use the Commerce Clause to completely obliterate the Constitution's

distinction between national and local authority." *Id.* at 1752. In assessing whether there is a substantial effect on interstate commerce, however, a court may view the regulated activities "in the aggregate." *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624. Specifically, Congress can regulate purely intrastate activity "if the activity has a sufficient nexus" to interstate commerce such that " 'the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations.' " *United States v. Genao*, 79 F.3d 1333, 1335 (2d Cir.1996) (quoting *Perez v. United States*, 402 U.S. 146, 156–57, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971)).

The activity proscribed by Section 513(a) is directly linked to interstate trafficking in stolen articles. Other statutes that regulate conduct in this area, such as Sections 2314 and 2315 of Title 18, United States Code, prohibit, respectively, the transportation of stolen goods or "securities . . . in interstate or foreign commerce," and the sale or receipt of stolen goods or "securities . . . which have crossed a State or United States boundary after being stolen, unlawfully converted or taken." The existence of these statutes reflects the reality that commerce in stolen property is interstate and, indeed, international. As the Second Circuit observed regarding a statute regulating the possession of machine guns that had no separate interstate jurisdictional element, Section 513(a) "fits into the overall regulation of the international and interstate market" in stolen property deemed worthy of regulation by Congress. *Franklyn*, 157 F.3d at 94. By regulating even the intrastate possession and transfer of counterfeit securities, Congress has effectively regulated interstate trafficking of this property. *See id.* at 96. Consequently, the activity proscribed by Section 513(a) is sufficiently connected to effects on interstate commerce that it does not threaten to obliterate the distinction between State and Federal law enforcement.

Applying the tests set out in *Morrison*, Section 513(a)'s proscription against the possession of counterfeit State securities is constitutional. The making, uttering, or possession of counterfeited State securities is economic activity directly linked to interstate commerce, and congressional findings regarding Section 513(a) support this conclusion. Although there is no jurisdictional element in the portion of Section 513(a) at issue in this case, the existence of such an element is not necessary in every instance, and based on Section 513(a)'s regulation of clearly economic behavior that has a substantial impact on interstate commerce, it is unnecessary in this instance.

## B. Sufficiency of Indictment

Hancock also argues that the indictment should be dismissed because it fails to allege that his conduct had any relationship to or effect on interstate or foreign commerce. An indictment must contain all of the elements of the offense in order to provide a defendant with notice of the offense for which he is charged and protection from double jeopardy. *United States v. Tran*, 234 F.3d 798, 805 (2d Cir. 2000). Nevertheless, an indictment need do little more than " 'track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998) (citation omitted). The Government's indictment charges each of the elements of Section 513(a) and is, therefore, sufficient.[3]

## CONCLUSION

Defendant's motion to dismiss the Superceding Indictment is denied.

SO ORDERED.

---

3. The proof at trial will apparently show that the defendant's activities directly concerned interstate commerce. The defendant allegedly sold a car in New York with a counterfeit New Jersey certificate of title and Connecticut license plates.