# United States Court of Appeals
## For the First Circuit

No. 04-1431

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

ROBERTO GARCÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,

and Stafford,* Senior District Judge.

James L. Sultan, with whom Jonathan Harwell was on brief, for appellant.
Nadine Pellegrini, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for the United States.

June 28, 2006

_____

* Of the Northern District of Florida, sitting by designation.

**Stafford**, <u>**District Judge**</u>.  Roberto García ("García") appeals his conviction for illegal re-entry into the United States by a deported alien in violation of 8 U.S.C. § 1326.  We affirm.

I.

On February 28, 2002, Seth Plumb ("Plumb"), a special agent with the Bureau of Immigration and Customs Enforcement ("ICE"), arrested García in Quincy, Massachusetts.  As an ICE special agent, Plumb was responsible for locating people who entered the United States illegally.  Plumb took García to the ICE Office, where, during the booking process, García's photograph and fingerprints were taken.

As a result of his encounter with García, Plumb reviewed the Alien Registration File of an individual named "Roberto García," assigned Alien Registration Number 876 586 529.  That Alien Registration File contained a number of documents, all with the same Alien Registration Number, revealing that "Roberto García" was a native and citizen of Colombia who had entered the United States illegally and had been deported in 1999 from the United States to his native country.  Among other things, the file contained a Warrant for Deportation, dated December 13, 1999, which included a photograph of "Roberto García" along with a print of his right index finger.  Trained in fingerprint comparison, Plumb compared the fingerprints obtained from García during the 2002 booking process with the fingerprint on the 1999 Warrant of

Deportation. Plumb concluded that the fingerprints belonged to the same person. Plumb also recognized the man in the photograph as the man he arrested in Quincy, Massachusetts.

García was indicted on March 27, 2002, in the United States District Court for the District of Massachusetts on one count of illegal re-entry by a deported alien in violation of 8 U.S.C. § 1326. He was convicted on November 4, 2003, after a two day trial during which the government called three witnesses: Plumb, Erik Carpenter ("Carpenter") (a forensic examiner for the Latent Print Unit of the FBI's Laboratory), and Joanne Sassone ("Sassone") (the Records and Information Services Officer for the United States Citizenship and Immigration Service of the Department of Homeland Security). On March 17, 2004, García was sentenced to 30 months in the custody of the Bureau of Prisons, with judgment entered the following day.

II.

In challenging his conviction, García first argues that the district court erred in admitting certain documents and testimony at trial. He then argues that there was insufficient evidence for a jury to convict him. We are not convinced by either argument.

A. EVIDENTIARY RULINGS

In general, we review a district court's decision to admit evidence for abuse of discretion. United States v. Flemmi,

402 F.3d 79, 86 (1st Cir. 2005). Where no objection was made to the admission of evidence at trial, we review evidentiary issues for plain error. *Id.* To establish plain error, a defendant must demonstrate that an error occurred which was obvious, which affected his substantial rights, and which seriously impaired the fairness, integrity, or public reputation of judicial proceedings. United States v. Delgado-Hernandez, 420 F.3d 16, 19-20 (1st. Cir. 2005).

1. García's Affidavit

Roberto García's Alien Registration File included an affidavit, dated October 27, 1999, containing the following statement, handwritten in English:

> My true [and] complete name is Roberto García. I was born on May 10, 1969 in Colombia and I am a citizen of Colombia. I entered the U.S. from Mexico in 1989 illegally. I did not present myself for inspection because I did not have a Visa.

The handwritten statement was signed: "Roberto G." The affidavit indicated that, while an interpreter was not used, the affiant appeared before a Spanish-speaking officer of what was then the United States Immigration and Naturalization Service[1] ("INS"), that the affiant was advised of his Miranda rights in Spanish, and

---

[1] The INS has since become ICE, the Bureau of Immigration and Customs Enforcement, which is part of the Department of Homeland Security.

that the affiant willingly made the above sworn statement. Following the signed handwritten statement was a typewritten statement indicating that the "foregoing statement" had been read to the affiant, that the answers made therein were true and correct, and that the affidavit was a full, true, and correct record of the affiant's interrogation by the INS officer. The typewritten statement was signed: "Robert G."

Before trial began, García moved in limine to exclude the affidavit, arguing that the affidavit was untrustworthy because it was prepared in English and allegedly signed by García, who speaks only Spanish. The district court rejected García's argument, explaining that (1) while the affidavit was written in English, it was interpreted into Spanish by the INS officer; (2) the affidavit indicated that García was advised of his rights; and 3) García's signature appeared on the affidavit. The district court noted not only that the signature on the affidavit appeared to be the same as the signature on a waiver-of-presence form[2] signed by García in open court that very day, but also that García did not challenge the signature and did not proffer that the affidavit had not been interpreted for him in Spanish.

At trial, the affidavit was introduced through Sassone, who testified that Roberto García's Alien Registration File was

---

[2] García voluntarily absented himself from the courtroom after jury selection, signing a waiver-of-presence form before he left the courtroom.

maintained in the regular course of business. Sassone identified the various documents contained in the Alien Registration File, including the 1999 affidavit, but she admitted that she had no personal knowledge about the events that triggered the preparation of those documents. García objected to admission of the affidavit on hearsay and lack-of-authentication grounds.

The district court overruled García's hearsay objection, finding that the affidavit was an admission of a party opponent. The district court again noted that García had adopted the statements contained in the affidavit as his own and had offered nothing to challenge the representation that the affidavit was explained in Spanish.

The district court also overruled García's objection to admission of the affidavit on authentication grounds. According to García, because Sassone had no personal knowledge about García's 1999 deportation and was not present when the affidavit was created, she could not establish that the document was, in fact, signed by García. The district court was unpersuaded, having itself seen the obvious similarities in the signature placed on the waiver-of-presence form signed by García in open court and the multiple signatures found on various documents in Roberto García's Alien Registration File.

García now contends that the district court committed reversible error by admitting the affidavit signed by "Roberto G."

We find no merit to such contention. Indeed, García has pointed to nothing in the record that casts doubt upon the district court's findings that (1) the statements contained within the affidavit were translated into Spanish for García's benefit, (2) García heard, understood, and acquiesced in those statements, and (3) García twice signed the affidavit, thereby signaling his adoption of the affidavit as his own. See McQueeney v. Wilmington Trust Co., 779 F.2d 916, 930 (3d Cir. 1985) (holding that a seaman's signature on Sea Service records prepared by others was "an unequivocal adoption of the contents therein"). Given these findings, we cannot say that the district court abused its discretion in admitting the affidavit as a non-hearsay admission of alienage by a party opponent.

García's authentication argument is equally unavailing. Under Federal Rule of Evidence 901(a), "[t]he requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." If the trial court determines that there is sufficient evidence to allow a reasonable person to believe the evidence is what it purports to be, the evidence may be admitted subject to the factfinder's assessing what weight will be given to the evidence. United States v. Alicea-Cardoza, 132 F.3d 1, 4 (1st Cir. 1997). There is no

single way, moreover, to authenticate evidence.  As this court has recognized on more than one occasion:

> [T]he direct testimony of a custodian or a percipient witness is not a *sine qua non* to the authentication of a writing. Thus, a document's appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to permit a finding that it is authentic.

E.g., United States v. Holmquist, 36 F.3d 154, 167 (1st Cir. 1994) (citations and internal quotation marks omitted), cert. denied, 514 U.S. 1084, 115 S. Ct. 1797, 131 L. Ed. 2d 724 (1995); United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994).

Here, given the absence of any evidence to refute what the affidavit, on its face, revealed, we find no abuse of discretion on the part of the district court in admitting the affidavit.  The content of the affidavit, the circumstances surrounding its creation, and its location in an Alien Registration File containing not only García's photograph but also several examples of his signature (a signature that appeared to be the same as the signature placed on the waiver-of-presence form signed by García in the presence of the district court) all support the district court's decision to admit the affidavit as an authentic document.

## 2. 1999 Fingerprint Card

During trial, García objected to the admission of Government's Exhibit 12, a fingerprint card that was signed "Roberto G." on the front and stamped "USINS, Pittsburgh, PA" on the back. Although it was included in Roberto García's Alien Registration File, the card was otherwise lacking a date, an Alien Registration Number, and such identifying information as a date of birth, social security number, height, weight, and FBI number. García objected that the card was untrustworthy because its only authentication was the purported signature of "Roberto G."

The district court overruled García's objection and admitted the fingerprint card, again noting that the signature on the card appeared to be the same as the signature on the affidavit. Indeed, the similarity in signatures was not the only factor supporting the district court's ruling. The fingerprint card was contained in an Alien Registration File that included a photograph of García. In addition, the stamp appearing on the back of the card, "USINS, Pittsburgh, PA," was consistent with other documents in the file indicating that the Roberto García whose photograph was in the file had been in INS custody in Pittsburgh, Pennsylvania, after he was encountered, but before he was deported, in 1999. There was thus sufficient evidence before the district court to warrant a reasonable person in believing that Government's Exhibit

12 was what it purported to be: namely, a card containing the fingerprints of García.

3.   Warrant of Deportation

The Warrant of Deportation, commanding any INS officer to take custody of Roberto García and to remove him from the United States, was introduced through Sassone.   She testified that a Warrant of Deportation, when complete with an alien's photograph and fingerprint, reveals that an INS official witnessed the alien's departure from the United States on a given date.   As explained by Sassone, the Warrant of Deportation contained in Roberto García's Alien Registration File, complete with photograph and fingerprint, revealed that Roberto García was actually placed on a plane in Newark, New Jersey, on December 13, 1999, for deportation out of the United States.   Sassone further explained that, had Roberto García been granted permission to re-enter the United States subsequently, such permission would be reflected not only in his Alien Registration File but also in the INS's computer indices. Sassone testified that she found no evidence, either in the Alien Registration File or the agency's computer indices, that permission to re-enter had ever been granted to Roberto García.

Relying on Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), García contends on appeal that the district court violated his confrontation rights by admitting the 1999 Warrant of Deportation when the officer who signed the

warrant was not made available for cross-examination. Because García did not object to the admission of the Warrant of Deportation at trial, we review for plain error.

In Crawford, 541 U.S. at 68, the Supreme Court held that the Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant concerning the statements. García argues that the Warrant of Deportation admitted in this case falls within the "core class" of testimonial statements described by the Supreme Court in Crawford.

At least three circuit courts have rejected the very argument being made here by García. In United States v. Valdez-Maltos, 443 F.3d 910, 911 (5th Cir. 2006), the Fifth Circuit held that warrants of deportation do not constitute testimonial hearsay under Crawford. The Ninth and Eleventh Circuits have likewise held that defendants have no right to confront and cross-examine the agents who routinely record warrants of deportation because warrants of deportation are "non-testimonial" and, therefore, not subject to the confrontation clause. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005), cert. denied, 126 S. Ct. 1652, 164 L. Ed. 2d 398 (2006); United States v. Cantellano, 430 F.3d 1142, 1145 (11th Cir. 2005), cert. denied, 126 S. Ct. 1604, 164 L. Ed. 2d 325 (2006); see also

-11-

United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating generally that documents in a defendant's immigration file are analogous to non-testimonial business records); United States v. Quezada, 754 F.2d 1190, 1194-95 (5th Cir. 1985) (holding that a warrant of deportation contained in an alien's INS file was reliable and admissible because the official preparing the warrant had no motivation to do anything other than "mechanically register an unambiguous factual matter").

Because we find no reason to disagree with the Fifth, Ninth, and Eleventh Circuits, we conclude that García has established no error at all, much less plain error, with regard to the admission of the 1999 Warrant of Deportation.

4.  Plumb's Identification of García

At trial, Agent Plumb testified, without objection, that he recognized the person whose picture appeared on the 1999 Warrant of Deportation as the same person he encountered in 2002 under the name "Roberto García."  Plumb also testified that he recognized this person as the individual--referring to García--who was in the courtroom during jury selection earlier that morning.  García now contends that the district court committed plain error by admitting Plumb's opinion testimony regarding the identity of the person in the photograph on the Warrant of Deportation.  According to García, Plumb's testimony was improper because it was based on Plumb's one-time "scant exposure" to García.

-12-

Although Plumb encountered García only once, it was not a fleeting encounter. In fact, Plumb encountered García in Quincy, Massachusetts, transported García from Quincy to Boston, booked García into the ICE system, filled in García's fingerprint card, and served García with several documents. There is nothing in the record to suggest that Plumb was unable to fully observe García during the 2002 arrest and booking, that Plumb did not remember García, or that Plumb had any difficulty in identifying García, either in person or by photograph. Under the circumstances, we find no plain error in the district court's decision to admit Plumb's identification testimony.

5. Plumb's Expert Testimony on Fingerprint Comparison

García contends that the district court abused its discretion in permitting Agent Plumb to testify--over García's objection--as an expert with respect to fingerprint comparison. García maintains that Plumb's purported expertise was inadequate in that it rested on a mere two days of training. We disagree.

In essence, Plumb testified that his training in fingerprint comparison began with a 16-hour course taught by a representative of the Massachusetts Bureau of Criminal Investigations. Plumb further explained that he received a certification in fingerprint comparison after he completed the 16-hour course, that he conducted more than 80 fingerprint comparisons over the course of the next two years, that his comparisons were

-13-

sometimes verified by another INS officer or by the Federal Bureau of Investigation, that the results of his comparisons had never differed from those of the person verifying his comparisons, and that he had testified as a fingerprint expert in federal court on several occasions.

This court may reverse the district court's decision regarding expert testimony only if the ruling "was so wide of the mark as to constitute an abuse of discretion." Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003); see also United States v. Valle, 72 F.3d 210, 214 (1st Cir. 1995) (explaining that the trial court has discretion to admit or reject expert testimony and its determination is reviewable only for an abuse of that discretion). Here, there was no abuse of discretion. To be sure, some experts are more qualified than others, and Plumb--in his capacity as a law enforcement officer--may not have had the same expertise as someone whose sole occupation is to compare latent prints. Plumb's training and experience were sufficient, however, to permit the district court, in its discretion, to admit Plumb's testimony. It was up to the jury to weigh that testimony, given what the jurors heard on direct and cross-examination about Plumb's training and experience.

B. SUFFICIENCY OF THE EVIDENCE

This court reviews sufficiency of the evidence claims *de novo*. United States v. Cruzado-Laureano, 404 F.3d 470, 480 (1st

-14-

Cir.), cert. denied, 126 S. Ct. 639, 163 L. Ed. 2d 517 (2005).  The court must determine "whether the evidence, taken in the light most favorable to the government--a perspective that requires us to draw every reasonable inference and resolve credibility conflicts in a manner consistent with the verdict--would permit a rational trier of fact to find each element of the crime charged beyond a reasonable doubt."  United States v. Patel, 370 F.3d 108, 111 (1st Cir. 2004).

To convict a defendant of a section 1326 violation, the government must prove that (1) the defendant is an alien; (2) he was arrested and deported; and (3) he thereafter entered, or attempted to enter, the United States without the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation.  United States v. Cabral, 252 F.3d 520, 522-23 (1st Cir. 2001).  Here, García maintains that the government's "paltry evidence" was insufficient to prove, beyond a reasonable doubt, that the person who was deported in 1999 was García.  According to García, the probative value of the government's evidence was "virtually nil" for the same reasons that the evidence--including the affidavit, the Warrant of Deportation, and the identification testimony--was purportedly inadmissible. We are not persuaded.

To the contrary, we find that the evidence adduced at trial--all properly admissible--was more than ample to establish, beyond a reasonable doubt, all three elements of the section 1326 charge against García. The signed statement admitting alienage, the Warrant of Deportation--with photograph and fingerprint-- indicating that García was seen departing the United States in 1999, Plumb's testimony regarding his 2002 encounter of García, Plumb's testimony regarding García's identity, and Sassone's testimony regarding the absence of evidence establishing that García had permission to re-enter the United States, could lead a rational trier of fact to conclude, beyond a reasonable doubt, that García was guilty as charged. That the government failed to call any witness who personally saw García sign the affidavit or depart from the United States does not lead us to think otherwise. See United States v. Melendez-Torres, 420 F.3d 45, 49 (1st Cir. 2005) (explaining that "circumstantial evidence, if it meets all the other criteria of admissibility, is just as appropriate as direct evidence and is entitled to be given whatever weight the [fact finder] deems it should be given") (quoting United States v. Gamache, 156 F.3d 1, 8 (1st Cir. 1998)).

## III.

Having concluded that the evidence was not only admissible but also sufficient to establish García's guilt beyond a reasonable doubt, we AFFIRM the judgment in this case.