# United States Court of Appeals
## For the First Circuit

No. 05-2848

UNITED STATES OF AMERICA,

Appellee,

v.

MARIO CONTRERAS PALACIOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Page Kelley for appellant.
Paul R. Moore, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

June 28, 2007

**LIPEZ**, **Circuit Judge**.  Mario Rudolfo Contreras Palacios, convicted of illegal reentry into the United States, claims that the testimony and documentary evidence offered by the government were insufficient to support his conviction on the alienage element of that offense.  He also argues that Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held that prior convictions need not be found by a jury beyond a reasonable doubt for the purpose of imposing sentencing enhancements, is no longer good law because of subsequent Supreme Court precedents.  We reject both arguments and affirm the conviction and sentence.

## I.

Identified as an alien[1] by the Department of Homeland Security ("DHS") while in custody of the Middlesex County, Massachusetts Sheriff's Office in December 2003, Contreras was indicted for illegally reentering the United States after a prior deportation, under 8 U.S.C. § 1326(a), (b).  Contreras stipulated that he had previously been deported and that he had not received permission to reenter the country.  He waived his right to a jury, proceeded to a bench trial, and argued that he was not an alien.

At trial, the government presented a single witness: Joann Sassone, the records custodian for the Massachusetts branch of the Citizenship and Immigration Service ("CIS") of the DHS.

---

[1] Under 8 U.S.C. § 1101(a)(3), an alien is any person "not a citizen or national of the United States."

-2-

Lacking any independent knowledge about the defendant and his history, Sassone testified solely on the basis of the "Alien File" ("A-file")[2] for Mario Rudolfo Contreras Palacios, which the defendant stipulated was "associated" with him. Sassone testified that the CIS assigns a unique registration number to each alien it encounters, and that all communication with or regarding an alien is preserved in that individual's A-file. She identified the most significant documents found in the A-file for Contreras Palacios, which included: a Guatemalan birth certificate; a Guatemalan identity document, known as a "cedula"[3]; a Record of Deportable Alien, dated September 7, 1984; a letter from the U.S. consulate in Guatemala; an envelope mailed from El Paso, Texas to the defendant; and a Warrant of Deportation dated August 22, 2000.[4] The cedula and the Warrant of Deportation contained photographs of and signatures by the named individual.

---

[2] For a description of an "A-file," see United States v. Earle, __ F.3d __, 2007 WL 1616515, at *2 n.2 (1st Cir. 2007).

[3] The cedula is a passport-like identity document, bearing a government seal and signed by a government official. It contains a form in which identifying information — such as name, parents' names, birth date, address, military service, eye color, and hair color — is recorded (here, in handwriting) by a government official. The document also contains a photograph, a single fingerprint, and the signature of the individual.

[4] Sassone testified that a Warrant of Deportation is a form routinely completed during the deportation process, in order to give DHS "the power to have this person removed from the United States," as well as to physically record the date and method by which the person was removed.

The file contained a written request from the U.S. consulate in Guatemala City, to a Guatemalan official, asking for a birth record for a Mario Rudolfo Contreras Palacios. The request also included his birth date, place of birth, and parents' names. Sassone opined that the birth certificate was obtained as a result of this request, which she said was prompted by a request from a Border Patrol Agent, although she had no direct knowledge of how the Border Patrol obtained the identifying information set forth in the letter requesting the birth certificate. She testified that the birth certificate was likely requested as a routine component of deportation proceedings, while Contreras was held in custody. She also theorized, based on the materials in the file, that the cedula was mailed to appellant, at his request, while he was in custody. Sassone testified that nothing in the A-file was inconsistent with the identifying information contained in the birth certificate and cedula.

The government called no other witnesses. Instead, it relied heavily upon the defendant-appellant's factual stipulations. In addition to agreeing that the A-file was associated with him, the defendant agreed that he was deported in August 2000, that he was found in the U.S. in 2003, that he had not received permission to enter the U.S. prior to his 2003 detention, and that the Guatemalan birth certificate was authentic. The government argued that these stipulations, along with the A-file, as explained by

-4-

Sassone, proved beyond a reasonable doubt that the defendant was the individual named Contreras identified in the file, and that he was an alien.

Contreras neither testified nor presented any witnesses on his behalf. Instead, he argued that the government had not carried its burden of proof because there was insufficient evidence that he was the person described in the documents (particularly the birth certificate and cedula) admitted at trial. Specifically, he claimed that the government lacked direct evidence of his alien status, such as fingerprint evidence tying him to the cedula or an admission or statement by him that his birth date was that listed on the birth certificate. Indeed, upon cross-examination, Sassone agreed that there were multiple records in the file reflecting Contreras' statement that he believed he had been born in America and was, therefore, a U.S. citizen. Contreras also pointed out, through counsel's closing argument, that the A-file contained multiple documents in which he claimed that his name was Oscar Raway and that he was an American citizen.

After Contreras filed a Rule 29 motion, the district court found summarily that there was sufficient evidence to show, beyond a reasonable doubt, that he was an alien. Contreras was convicted of illegal reentry and sentenced to seventy-seven months of incarceration. He then filed this appeal.

**II.**

Contreras raises two issues on appeal.  First, he argues that there was insufficient evidence on the alienage element of the offense to support his conviction.  Second, he argues that the sentence, although consistent with Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998), was improper.  He claims that Almendarez-Torres is no longer valid law because of the subsequent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).  We address these arguments in turn.

**A.  Sufficiency of the Evidence**

To secure a conviction under 28 U.S.C. § 1326, the government must prove that the defendant: (1) is an alien, (2) was previously deported, and (3) thereafter entered, or attempted to enter, the United States without permission.  See United States v. Garcia, 452 F.3d 36, 43 (1st Cir. 2006).  As noted, only the first of these elements is at issue here.  Contreras has conceded that he was previously deported and that he reentered the country without permission.

We review the district court's finding of sufficient evidence de novo.  Id.  We evaluate sufficiency of the evidence claims to determine "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the

essential elements of the crime." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

This case is based on circumstantial evidence. Contreras rightly argues that there is no single document that, on its face, definitively connects him to the Guatemalan birth certificate or cedula. However, the government asked the district court to find that the defendant was an alien based, in part, on his physical similarity to the photograph on the cedula.[5] The government also requested that the court look at the defendant's face and observe a scar on his lower lip and chin, matching a scar described on the 1984 Record of Deportable Alien ("RDA"), a form completed by INS agents when a suspected alien is detained pending removal proceedings. While the district court did not articulate a specific finding that the man sitting in the courtroom appeared to be the same person shown in the picture on the cedula, with the same identifying scar noted on the RDA, we infer that the court so found. The court made multiple comments reflecting its awareness that the government, to carry its burden, had to connect the defendant to the two identity documents — the birth certificate and cedula — which establish that the party identified therein was born

_____

[5] As the government argues in its brief on appeal, it "did not argue to the district court, and does not here contend, that the photograph on the cedula was indisputably that of the defendant. But the photograph is entirely consistent with the defendant's appearance at trial, when allowance for normal aging is considered. Thus, the photograph does represent meaningful evidence that the cedula pertained to him."

out of the jurisdiction of the United States.  Relying on its ability to observe the defendant in the courtroom, the court could reasonably conclude that the photograph on the cedula was consistent with the appearance of the defendant.[6]

In addition, both the birth certificate and the cedula[7] identify a person named Mario Contreras Palacios,[8] born on October

_____

[6] At the time of trial, Contreras (assuming, in light of our conclusions, that his birthdate was the one reflected in the birth certificate) was fifty years old.  There is no date associated with the photograph on the cedula, so we cannot discern (and assume the district court could not determine) how old he was when that picture was taken.

[7] The birth certificate and cedula, both in Spanish, were offered into evidence by the government without written English translations.  Although both were translated by an interpreter for the district court, that translation was not incorporated into the trial transcript.  This was error.

Under First Circuit Local Rule 30(d), documents may not be included in an appendix to the briefs if they are written in a foreign language and unaccompanied by translations.  The government was particularly remiss in not making translations of the cedula and birth certificate part of the trial record, given the importance of these documents to the government's sufficiency of the evidence argument.

In order to address the sufficiency claim on appeal, however, we refer to the birth certificate and cedula for very limited purposes.  We look to the written portion of these documents only to compare the name, birthdate, and parents' names listed thereon to those appearing on the RDA.  Because our reliance on these documents is so limited, and because neither party raises an objection to our consideration of them, we are willing to consider the documents despite the absence of translations.

[8] We note that the birth certificate names "Mario _Roberto_ Contreras Palacios." (Emphasis added.)  The Vice Consul of the United States requested that the Civil Registrar of Guatemala provide a copy of the birth certificate for "Mario _Rodolfo_ Contreras Palacios," (emphasis added) and it appears that this certificate was produced in response.  In fact, discrepancies in the middle name appear to pervade the file.  The cedula lists the

29, 1954 to a mother named Isabel Palacios and a father named Jose Mario Contreras. Those essential facts match the biographical information appearing on other documents in the A-file, including, notably, the RDA.

Contreras argued at trial that the government lacked evidence showing that he, the person on trial, provided the biographical information that appeared on the RDA. The government argued that the court could infer that the defendant had provided that information. Importantly, in support of that inference, information appearing on the RDA matches up with other documents in the A-file linked to the defendant. An INS agent noted on the RDA that the "subject has claimed on many occasions to be a U.S. citizen by the name of Oscar Efrain Raway." That alias matches the alias provided on the 2000 Warrant of Deportation, which the defendant stipulated as a record of <u>his</u> prior deportation. The same alias also appears on some handwritten notes in the A-file, apparently by an INS agent, dated from 1983; a judgment of

middle name as Rodolfo, while numerous other documents in the file spell the name as Rudolfo. Many of these same documents list an "AKA" of Mario Roberto Contreras Palacios; they also list AKAs of Oscar Raway and Oscar Efrain Raway. We conclude that the different middle names and the aliases are of no consequence. It appears to us that a reasonable factfinder could easily conclude that this person used two names, one his "real" name (albeit with some confusion regarding the middle name) and a pseudonym (with a few variations thereof). No document in the A-file indicates that the person called himself by any name other than a variation of these two names. Additionally, the defendant-appellant has not argued that discrepancies in the middle name are independent evidence of mistaken identity.

conviction for illegal reentry from the District Court for the Southern District of New York in 1990; and an FBI "rap sheet" (as described by Sassone) from 1983. The consistent use of a single alias throughout these documents, including the 2000 document that the defendant conceded as having applied to him, bolsters the government's argument that Contreras was the alien detained in 1984, whose biographical information was described in the RDA and matched the Guatemalan birth certificate and cedula.

In further support of its case, the government also noted that the RDA included a notation that the subject alien stated he could "obtain his own ID records, which he has at home in [El Paso, Texas]." The RDA was dated September 7, 1984, and the A-file contains an envelope postmarked September 22, 1984, addressed to Mario Contreras Palacios at the Service Processing Center in El Paso, Texas. (Sassone testified that the Service Processing Center was the location where the alien was physically detained.) The return address on the envelope included the name Maria de Jesus Castruita; the RDA listed Maria de Jesus Castruita as Contreras' "common law wife." Immediately adjacent to the envelope in the A-file was the cedula. Sassone testified that she believed, on the basis of the documents, that the defendant told INS agents that he could obtain his national identity documents, requested the document from his common law wife, and she then mailed the cedula to him at the detention center. The court could reasonably draw

upon this evidence to support the inference that the defendant was the person detained in 1984 and that the cedula was his proof of identity, showing his status as an alien.

In short, construing the evidence in the light most favorable to the government, as we must, we conclude that there was sufficient evidence for a reasonable fact finder to conclude that Contreras was an alien.

## B.  Sentencing & Almendarez-Torres

Contreras claims that his sentence was improper because the district court imposed a sentencing enhancement based on his prior convictions, in violation of his rights under Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Supreme Court has held that sentencing enhancements based on prior convictions are permissible without a finding on the fact of conviction beyond a reasonable doubt.  Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998).  Although Apprendi held that factors leading to an increased sentence must be charged in the indictment and found by a jury, its holding expressly excluded prior convictions from this general rule.  530 U.S. at 490.  As we have stated many times, we are bound by Almendarez-Torres unless and until the Supreme Court overturns it.  See, e.g., Earle, 2007 WL 1616515, at *11 ("This court has repeatedly stated post-Apprendi that we are bound by Almendarez-Torres until the Supreme Court expressly overrules it.").  There is no basis for disturbing Contreras' sentence.

**Affirmed.**