T.C. Summary Opinion 2019-26

UNITED STATES TAX COURT

PASCAL NSAME AND LAMIAA MSALKA, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11462-15S.                    Filed September 23, 2019.

Pascal Nsame and Lamiaa Msalka, pro sese.

<u>Timothy B. Heavner</u> and <u>Mary Ann Waters</u>, for respondent.

SUMMARY OPINION

COLVIN, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Section references are to the Internal Revenue Code in effect for the year in
issue.  Rule references are to the Tax Court Rules of Practice and Procedure.
Dollar amounts are rounded to the nearest dollar and are in U.S. dollars unless

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $45,654 in petitioners' Federal income tax for 2012. After concessions,[2] the issues for decision are:

1. Whether petitioners bear the burden of proof. We hold that they do.

2. Whether petitioners had a loss from the sale of their home in Montreal, Canada (the Canadian property), as they claimed at trial, a gain of $72,525 as respondent contends, or a gain or loss in some other amount. We hold that petitioners' gain from the sale of the Canadian property was $72,525.[3]

3. Whether petitioners are entitled to a deduction for a foreign currency transaction loss under section 988. We hold that they are not.

---

[1](...continued)
otherwise indicated. Petitioners resided in Vermont when they timely filed the petition.

[2]The parties agree that petitioners may deduct a partial homeowners exclusion of $82,192; $22,434 in selling expenses; and $44,955 in expenses for additions/improvements on the home. Respondent's computations use $44,955 as the amount of the additions/improvements. However, respondent's opening brief states that the additions/improvements to the Canadian property totaled $44,935. We will treat $44,955 as the correct amount.

[3]During the Rule 155 computation the parties shall adjust the amount of gain to take into account our finding that the Canadian property was not held for the production of income after March 31, 2012.

4. Whether or to what extent petitioners may deduct business expenses. We hold that they are to the extent stated below.

5. Whether petitioners are liable for the 10% additional tax under section 72(t) for a distribution from a retirement account. We hold that they are.

## Background

Petitioners, Pascal Nsame (petitioner husband) and Lamiaa Msalka (petitioner wife), were both employed by International Business Machines Corp. (IBM) in 2012.

### A. The Canadian Property

Petitioners purchased the Canadian property in July 2003. Petitioner wife lived there from July 2003 until October 2006 when she moved to Vermont for work. Petitioners held the Canadian property out for rent beginning on October 7, 2006. Petitioner husband resumed living at the Canadian property in August 2012. Petitioners sold the Canadian property on November 29, 2012.

### B. Distribution From Petitioner Husband's Retirement Account

Petitioner husband withdrew $17,500 from his retirement account in 2012, as reported to him on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., provided by Fidelity Investments.

C.    Tax Returns

Petitioners reported no expenses on their Schedule C, Profit or Loss From Business, filed with their joint Federal income tax return for 2012.  After receiving the notice of deficiency and filing their petition, petitioners provided respondent three amended tax returns for 2012.  Petitioners reported Schedule C business expenses of $42,532 on their first amended return and $47,283 on their two subsequent amended returns.  At trial petitioners submitted a spreadsheet[4] that stated they had $43,277 in business expenses.

D.    Document Requests

Respondent requested documents from petitioners to evaluate their various contentions.  Petitioners responded by stating that the requests were unreasonable, that some of the documents were confidential, and that they would provide only nonconfidential business information.  Petitioners eventually provided a small amount of documentation, but except for one business expense item none of the documentation was sufficient to substantiate their claims.

---

[4]The record does not indicate when the spreadsheet was prepared.

## Discussion

Our discussion is organized as follows: (A) burden of proof, (B) gain or loss on the sale of the Canadian property, (C) foreign currency transaction loss, (D) business expenses, (E) the 10% additional tax under section 72(t) for an early distribution from a retirement account, and (F) petitioners' claim for damages.

### A. Burden of Proof

Taxpayers generally bear the burden of proving that the Commissioner's determination is incorrect. Rule 142(a); see Welch v. Helvering, 290 U.S. 111, 115 (1933). However, under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayers comply with all substantiation requirements in the Internal Revenue Code, introduce credible evidence with respect to factual issues relevant to ascertaining their liability, and cooperate with reasonable requests by the Commissioner for information, documents, and meetings. Sec. 7491(a)(1) and (2)(A) and (B).

Petitioners contend that the burden of proof has shifted to respondent under section 7491(a). Respondent requested information relating to petitioners' claims, but petitioners' responses were insufficient to substantiate them. Nothing in the record supports petitioners' claims that respondent's requests were unreasonable or that they were justified in not producing some of the documents on the grounds

that they were confidential. Thus, petitioners have not satisfied the requirements of section 7491(a).

B. Gain or Loss on the Sale of the Canadian Property

In their petition, petitioners contend they had taxable gain of $70,264 on the sale of the Canadian property. At trial petitioners contended they sustained a loss when they sold the property. Respondent contends petitioners had gain of $72,525. The parties dispute the amounts of the Canadian property's cost basis, adjusted basis, and sale price and the dates that the property was held for the production of income.

1. Purchase Price

At trial petitioner husband testified that the cost basis of the Canadian property was $189,946 instead of the $137,493 used by respondent. Petitioners offered into evidence five documents written in French, which they argue substantiate their claim that the cost basis was $189,946.

Documents written in a language other than English are generally not admissible unless the offering party provides an English translation. United States v. Rivera-Rosario, 300 F.3d 1, 6 n.4 (1st Cir. 2002); see also United States v. Diaz, 519 F.3d 56, 64-65 (1st Circ. 2008); United States v. Contreras Palacios, 492 F.3d 39, 43 n.7 (1st Cir. 2007). Petitioner husband testified that the French language

documents, Exhibit 16-P, established the cost basis but later said that they provided information about the refinancing of the Canadian property in 2006. The French language documents include no translation[5] and thus are not admissible.

We decide whether a witness' testimony is credible by relying on objective facts, the reasonableness of the testimony, the consistency of statements made by the witness, and the demeanor of the witness. See Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), aff'g 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). Witness testimony could almost always be said to be "self-serving", but that factor alone is not a reason to automatically reject the evidence as unreliable. Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 320-321, 321 n.2 (3d Cir. 2014). We may discount testimony which we find to be unworthy of belief, see Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted, see

---

[5]Petitioners submitted one translated document with their answering brief. We generally do not consider documents submitted by one party after trial because the other party has not had an opportunity to seek additional testimony relating to the document. In addition, according to the translation, the document is a credit application and does not show the amount of petitioners' cost basis in the Canadian property. Thus, we do not consider that document in deciding this case.

Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), aff'g and remanding 99 T.C. 370 (1992), and T.C. Memo. 1992-616.

Petitioner husband testified that their cost basis was $189,946. However, in two letters to respondent petitioners said the cost basis was CAD186,000, which, according to the conversion rate (0.73921) used by both parties, equaled $137,493 at the time of purchase. Because of this inconsistency, petitioner husband's testimony on this point was not credible. Without documentary evidence or credible testimony supporting their claim, petitioners have not shown that the cost basis of the property was an amount other than $137,493 as determined by respondent. Thus, we find that petitioners' cost basis in the Canadian property was $137,493.

2. Adjusted Basis

Petitioners contend that their adjusted basis includes $73,459 in "other" expenses (comprising Montreal business losses from 2003 to 2012, utilities, business travel in 2012, and vehicle expenses) and $95,730 from "loss of income". Petitioners do not adequately explain how the "other" expenses relate to their basis in the Canadian property. Therefore, the $73,459 is not included in their adjusted basis.

Petitioner husband testified that the $95,730 "loss of income" comprises a foreign currency transaction loss of $52,453 and business expenses totaling $43,277. As discussed below petitioners may not deduct any amount for a foreign currency transaction loss. Thus, petitioners' basis does not include any of the $95,730.

3. Depreciation

Respondent contends that petitioners placed the property in service as a rental on October 7, 2006, in part because petitioners so stated in two letters they sent to respondent. In contrast petitioner husband testified that after petitioner wife moved to Vermont, they held the Canadian property for sale from October 2006 to October 2007 and then held it for rent.

Petitioner husband's testimony that petitioners first held the Canadian property for rent in October 2007 is contrary to the letters he sent to respondent. His testimony relating to the attempted sale of the property was vague, murky, and unaccompanied by any related documentary evidence. The complete absence of relevant documents undermines his credibility. Therefore, we find that the

Canadian property was not held for sale from October 2006 to October 2007 and was placed into service as a rental on October 7, 2006.[6]

Under section 1.168(i)-4(c), Income Tax Regs., when a property held for the production of income is converted to personal use, it is depreciable only for the "months * * * the property is deemed to be placed <u>in service</u> during the year". (Emphasis added.) Petitioners contend that the property ceased being held for the production of income in March 2012. Respondent states that the property was "placed in service until April 2012." Respondent's calculations treated the property as depreciable until August 2012 when petitioner husband resumed living in the home. Because both parties state that the property was held for rent through but not after March 2012, we treat the rental period as ending March 31, 2012. Thus, we find that the Canadian property was held for rent from October 7, 2006, to March 31, 2012.

4.    <u>Sale Price</u>

At trial the parties agreed that the sale price of the home was $301,990. After trial petitioners contended they are allowed a 50% reduction in the sale price of the home (to $150,995) because of a "50% business use" rule. Petitioners did

---

[6]Respondent states, and petitioners do not dispute, that the date is October 7, 2006, and we accept that date.

not provide any authority for this 50% reduction. In addition their contention is untimely. We find that the sale price of the Canadian property was $301,990.

C.     Foreign Currency Transaction Loss

Petitioners contend that they are entitled to deduct a foreign currency transaction loss under section 988 of $52,453 for mortgage payments they made on the Canadian property. We disagree.

A foreign currency transaction loss can occur when there are changes in the exchange rate between the taxpayer's primary currency and the currency in which the debt was denominated. Sec. 988(b)(2), (c)(2) and (3). Petitioners did not provide testimony or admissible documents[7] to substantiate the amounts of payments they made on the mortgage during the rental period. Thus, petitioners have not shown they may deduct a foreign currency transaction loss.

D.     Business Expenses

Section 162(a) allows deductions for ordinary and necessary business expenses paid or incurred in conducting a trade or business. Taxpayers must maintain records that sufficiently substantiate the amounts of their claimed deductions. Sec. 6001; see Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975),

---

[7]Petitioners provided only the French language documents, which are not admissible. See supra pp. 6-7.

aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Petitioners deducted $500 for professional membership fees paid to the Institute of Electrical and Electronics Engineers. Petitioners adequately substantiated that this expense is related to petitioner husband's employment at IBM; thus they may deduct it as an unreimbursed employee expense.

Petitioners also contend they are eligible for business deductions for expenses for travel, office supplies, professional certifications, bookkeeping services, telephones, interest on a business loan, and a timeshare in Florida. Except as discussed above, the documentation they provided did not sufficiently substantiate the amounts claimed or show that the expenses were business related. Petitioner husband's testimony concerning the legitimacy and amount of the business expenses was evasive and lacked credibility. For example, when asked whether he had brought documents to substantiate his business expenses, he responded that his documents were too numerous for him to find those respondent had requested and that respondent had had the chance to ask for the documents for years and had not. We note that respondent had asked petitioners for, but petitioners did not provide, these documents at least three times before trial. Thus,

except for $500 for the professional membership, petitioners may not deduct business expenses for 2012.

E.    10% Additional Tax Under Section 72(t)

Petitioners withdrew $17,500 from petitioner-husband's retirement account in 2012.  Section 72(t) provides that, unless an exception applies, any distributions from a retirement account are subject to a 10% additional tax.  One of the exceptions is payment of a tax levy.  Sec. 72(t)(2)(A)(vii).  Petitioners contend that they used a portion of the $17,500 to pay a tax levy.[8]  However, they provided no evidence describing the tax levy.  In his testimony petitioner husband referred to the tax levy only vaguely.  He did not specify the date, the amount, or the taxing authority that imposed the levy.  Petitioners have not shown that they are eligible for the exception for tax levies under section 72(t).

Petitioners also contend that the remaining portion of the $17,500 was a loan which they used to purchase a home in Vermont in 2013.  Petitioners provided only Form 1099-R as evidence of the loan, but that form does not provide any information about a loan.  Because of the lack of sufficient evidence

---

[8]After trial petitioners stated that additional exclusions under sec. 72(t)(2)(A) applied to the disbursement.  Their claim of additional grounds is untimely, and we will not consider it.

relating to petitioners' use of the funds distributed from his retirement account, the entire $17,500 is subject to the 10% additional tax under section 72(t).

F.     Petitioners' Claim for Damages

Petitioners seek monetary damages from respondent on the grounds that respondent knowingly misrepresented the facts, made intentional false statements, and concealed the truth.  There is no credible evidence in the record supporting petitioners' claims on these points.

To reflect the foregoing,

Decision will be entered under

Rule 155.