# United States Court of Appeals
## For the First Circuit

No. 00-1163

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL BURGOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, Senior U.S. District Judge]

Before

Selya, Lynch, and Lipez, Circuit Judges.

Joshua L. Gordon for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

June 22, 2001

**LIPEZ, Circuit Judge**.  Daniel Burgos appeals his convictions and sentence for one count of attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 and § 841(a)(1), and one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  He makes five arguments: (1) that the indictment is defective for not sufficiently alleging proof that the money laundering transaction affected interstate commerce; (2) that the evidence was insufficient to convict him on both charges; (3) that the district court abused its discretion in not severing the two charges; (4) that the government violated the Speedy Trial Act, 18 U.S.C. § 3161(b), in charging him with money laundering; and (5) that the district court erred in sentencing him on the cocaine conviction.  For the reasons that follow, we affirm his convictions on both counts, as well as his sentence.

## I. Background

The government's case against Burgos originated with the arrest of William O'Neil on February 10, 1999 by the Drug Enforcement Administration.  Agreeing to cooperate with the government that same day, O'Neil arranged with Burgos, in a recorded telephone call, for Burgos to purchase two kilograms of cocaine at a price of $22,000 per kilogram.  When Burgos arrived

at the designated meeting place for the transaction, he was arrested immediately. Burgos had not yet obtained the cocaine from O'Neil at the time of his arrest and he had not yet had the opportunity to observe whether O'Neil was in possession of any cocaine. Burgos was carrying $44,000 in cash when he was arrested.

The grand jury returned an indictment on February 25, 1999 charging Burgos with attempting to possess with intent to distribute cocaine. After further investigation, the government obtained a search warrant for Burgos's residence, which it executed on March 9. Various documents, including financial and employment records, were seized at that time. Based on those records, a superseding indictment was returned on June 17 charging Burgos with money laundering and renewing the drug charge. Following a three-day trial, a jury convicted him of both counts on August 18, 1999. The district court sentenced Burgos in January 2000 to 108 months in prison.

## II. Allegations of Interstate Commerce in the Indictment

Burgos argues that the indictment contained insufficient allegations that his monetary transaction affected interstate commerce. Because he did not raise this claim below, we review for plain error. See United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir. 2000).

The indictment charged that Burgos:

> did knowingly and willfully conduct and attempt to conduct a financial transaction, to wit, the delivery of $44,000 in cash, which said cash involved the proceeds of a specified unlawful activity, that is, the distribution of a controlled substance, a violation of Title 21, United States Code, Section 841(a)(1), with the intent to promote the carrying on of a specified unlawful activity, to wit, the distribution of cocaine, a violation of Title 21, United States Code, Section 841(a)(1), and that while conducting and attempting to conduct such financial transaction knew that the cash represented the proceeds of unlawful activity.

The language of the indictment does not allege specifically that the transaction affected interstate commerce. However, "financial transaction" is defined as "a transaction which in any way or degree affects interstate or foreign commerce." 18 U.S.C. § 1956(c)(4)(A). Moreover, the indictment specifically alleged that the financial transaction at issue was Burgos's attempt to purchase cocaine for $44,000. It is well-settled that drug trafficking is an activity that affects interstate commerce. See United States v. Zorilla, 93 F.3d 7, 8 (1st Cir. 1996); see also United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999); United States v. Gonzalez-Maldonado, 115 F.3d 9, 21 (1st Cir. 1997). We conclude, therefore, that the indictment sufficiently alleged interstate commerce as an element of the crime, and that Burgos was on notice of that element. Cf.

-4-

United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000) ("[A]n indictment that charges a legal term of art sufficiently charges the component parts of that term." (internal quotation marks omitted)); United States v. Kovach, 208 F.3d 1215, 1219 (10th Cir. 2000) (finding that the indictment adequately charged the interstate commerce element by using the word "organization," a term of art defined by statute as an entity that affects interstate commerce); United States v. Wicks, 187 F.3d 426, 428 (4th Cir. 1999) (same). Indeed, Burgos does not claim in his brief that he lacked notice of this element. Moreover, even assuming that the charging language was in error, Burgos has not even attempted to show the prejudice required by the plain error standard. See United States v. Balgyga, 233 F.3d 674, 682 (1st Cir. 2000). Thus, we reject Burgos's claim that his conviction should be reversed because of an error in the indictment.

## III. Sufficiency of the Evidence

In assessing Burgos's challenges to the sufficiency of the evidence, we must determine whether the evidence taken in the light most favorable to the prosecution supports the guilty verdicts. See id.

**A. Attempt to Possess with Intent to Distribute Cocaine**

Burgos was convicted of attempting to possess cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1)[1] and 21 U.S.C. § 846.[2] He argues that a rational jury could not have convicted him because there was no actual cocaine involved in the transaction between him and O'Neil. The government concedes that Burgos was arrested before he came into possession of any cocaine, and that O'Neil did not have any cocaine with him when he met Burgos to complete the transaction.

Contrary to Burgos's assertion, neither O'Neil nor Burgos had to possess cocaine at the time of the contemplated transaction to satisfy the elements of this crime. "To prove attempt, the government must establish both an intent to commit the substantive offense and a substantial step towards its commission." United States v. Argencourt, 996 F.2d 1300, 1303 (1st Cir. 1993) (internal quotation marks omitted). The step towards completion of the crime "must be more than mere preparation." Id. (internal quotation marks omitted).

_____

[1] 21 U.S.C. § 841(a)(1) provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

[2] 21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Nonetheless, an individual accused of attempt to possess cocaine "does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense." United States v. Doyon, 194 F.3d 207, 211 (1st Cir. 1999).

A rational jury could have found easily that Burgos demonstrated an intent to commit the substantive offense of possessing cocaine with intent to distribute it. Law enforcement officers testified that Burgos arranged the transaction with O'Neil over the course of six telephone calls. Shortly before the agreed-upon meeting time, surveillance officers observed Burgos leave his home in a car, closely followed by an individual in another car. The drug agents testified that the presence of this second car was consistent with the practice of bringing security to a narcotics transaction. The officers then observed Burgos arrive at the location that he and O'Neil had specified carrying $44,000 in cash, a sum corresponding to the price and quantity of cocaine he had agreed to purchase - two kilograms at $22,000 each. Burgos approached O'Neil and was immediately arrested. This evidence establishes Burgos's criminal intent and further constitutes a substantial step towards commission of the substantive offense of possessing cocaine. Whether he or O'Neil

did in fact possess cocaine at some point during the transaction is irrelevant.

## B. Money Laundering

Burgos was convicted of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).[3] He claims that the government failed to prove that his attempt to exchange $44,000 in cash for two kilograms of cocaine had a sufficient link to interstate commerce. As we have already noted, section 1956 defines "financial transaction" as "a transaction which <u>in any way or degree</u> affects interstate or foreign commerce." 18 U.S.C. § 1956(c)(4)(A) (emphasis added). In interpreting this provision, we have held that "[a] minimal effect on interstate commerce is sufficient to support a conviction." <u>Owens</u>, 167 F.3d at 755.

For reasons we have already discussed, a rational jury could have found that Burgos attempted to purchase two kilograms of cocaine for $44,000 cash. The government presented additional evidence from which a jury could have inferred that

---

[3] 18 U.S.C. § 1956(a)(1)(A)(i) provides, in part, that money laundering is committed whenever a person, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, <u>conducts or attempts to conduct</u> such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity." (Emphasis added.) Although Burgos was arrested before he completed the financial transaction in which he had planned to exchange cash for cocaine, § 1956 applies to such attempted transactions.

the cash was derived from Burgos's involvement in trafficking narcotics. For example, financial and employment records seized during a search of Burgos's home indicated that his family's expenditures far exceeded the legitimate income produced by him and his wife. Plastic bags containing marijuana residue were also found during the search. Government witnesses further testified that O'Neil told Burgos when they arranged the transaction that the person delivering the cocaine to O'Neil had just arrived from New York and was impatient to return there. Therefore, the facts of the transaction as Burgos believed them to be establish the element of interstate commerce. See United States v. Dworken, 855 F.2d 12, 16 (1st Cir. 1988) (stating that a person is guilty of an attempt to commit a crime if, "under the circumstances as he believes them to be," the act is a substantial step in a course of conduct planned to culminate in a crime (quoting American Law Institute, Model Penal Code § 5.01(1)(c)(1985))). Additional evidence indicated that most of the cocaine in the area of Springfield, Massachusetts at the time of Burgos's arrest came from New York, and that both the cocaine and the money used to purchase it would thus be likely to travel across state lines.

It is a well-settled proposition that "drug trafficking is precisely the kind of economic enterprise that substantially

affects interstate commerce." Zorilla, 93 F.3d at 8.  We have held in other cases that involvement in the drug trade satisfies the "effect on interstate commerce" prong of the money laundering statute.  See, e.g., Owens, 167 F.3d at 755 (affirming the conviction where there was evidence that the money involved in the transaction was generated by a drug enterprise transporting cocaine and cash between Providence and Boston); Gonzalez-Maldonado, 115 F.3d at 21 (affirming conviction under § 1956 where the jury could have inferred that the defendant engaged in telephone conversations that were part of illegal drug activity and not a legitimate business).  Therefore, we reject Burgos's claim that there was insufficient proof of a link between his attempted financial transaction and interstate commerce.

## IV. Severance

The district court denied Burgos's motion to sever the two counts of the superseding indictment in a written memorandum and order.  We review that determination for manifest abuse of discretion.  See United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999).

Federal Rule of Criminal Procedure 14 provides: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or

information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed. R. Crim. P. 14 (emphasis added). We will overturn a court's exercise of its discretion in considering a motion for severance "only upon a demonstration of manifest abuse." United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990). "This is a difficult battle for a defendant to win. There is always some prejudice in any trial where more than one offense or offender are tried together - but such 'garden variety' prejudice, in and of itself, will not suffice." Id. Burgos must demonstrate that the allegedly improper joinder "likely deprived [him] of a fair trial." United States v. Bartelho, 129 F.3d 663, 678 (1st Cir. 1997) (internal quotation marks omitted). Burgos's claim falls far short of this standard.

Burgos argues that the jury may have been improperly led to convict him of both charges because the evidence relating to one charge tended to prove that he was of bad character generally. Under similar circumstances, we have found this sort of vaguely articulated prejudice to be insufficient: "[Appellant's] bare allegation that, if the jury were to believe that he was involved in one bank robbery, then it might also

(improperly) be led to believe from that fact alone that he was involved in the other, is simply not enough." United States v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995). Although Taylor involved a defendant prosecuted for two counts of bank robbery for two separate incidents, while Burgos was prosecuted for two separate crimes arising from the same incident, the reasoning of Taylor applies with equal force here.

Moreover, as the district court noted in its written memorandum and order denying Burgos's motion for severance, proof of the two charges necessarily involved proof of much the same conduct. Count two of the indictment, charging money laundering, charged that the "specified unlawful activity" involved in the transaction was the attempted distribution of cocaine. Therefore, to convict Burgos of money laundering, the government had to prove that he had attempted to distribute cocaine to satisfy the "specified unlawful activity" element of the crime. See 18 U.S.C. § 1956(a)(1)(A)(i) (criminalizing attempting to conduct a financial transaction "which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity") (emphasis added). Furthermore, proof of the drug charge required an explanation of the agreed-upon purchase price for the cocaine, as well as a description of the cash Burgos was

-12-

carrying at the time of his arrest.  Because proof of the two charges involved some of the same evidence and the same witnesses, and Burgos did not make an adequate showing of prejudice from joinder of the two counts, the district court was well within its discretion in denying the motion to sever.

Burgos makes one final argument on the severance issue. The government introduced substantial evidence at trial concerning Burgos's assets, earnings, and expenditures.  Bank records indicated that Burgos made deposits into his checking account during the years 1996 to 1999 that far exceeded the modest wages earned by Burgos and his wife.  Other evidence, including receipts, showed that Burgos had also purchased expensive jewelry, cars, and a vacation.  He claims that this evidence regarding his financial condition would not have been admissible at a trial of only the drug charge because Federal Rule of Evidence 404(b) would have prevented the government from introducing such evidence if it tended only to prove his bad character.

> That evidentiary rule provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. <u>It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent</u>, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b) (emphasis added). The evidence of Burgos's financial condition was admissible to prove the government's case on the drug charge under this "other purposes" prong of Rule 404(b). Evidence of large sums of unexplained cash is relevant to demonstrating an individual's involvement in illegal drug activities. See United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992); United States v. Newton, 891 F.2d 944, 948 (1st Cir. 1989). Moreover, Burgos's history of trafficking in narcotics was probative of his knowledge and intent in arranging the transaction with O'Neil. See United States v. Spinosa, 982 F.2d 620, 628 (1st Cir. 1992) (approving admission of evidence of past drug crimes as "probative of the fact that [the defendant] was not merely an innocent driver who was involved in the transaction by accident"); United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990) ("We have often upheld the admission of evidence of prior narcotics involvement in drug trafficking cases to prove knowledge and intent."). Given this probative value of the evidence, it was admissible so long as its probative value was not "substantially outweighed" by the risk of prejudice. Fed. R. Evid. 403. See also Hadfield, 918 F.2d at 995 (affirming admission of past criminality where such evidence "was prejudicial - but not unduly so"). We defer to the district court's calculation of the probative and

prejudicial value of this evidence. "Only rarely - and in extraordinarily compelling circumstances - will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Machinery Co., 865 F.2d 1331, 1340 (1st Cir. 1988). This is not such a circumstance.[4]

## V. Violation of the Speedy Trial Act

Burgos argues that his rights under the Speedy Trial Act, 18 U.S.C. § 3161(b), were violated because he was not indicted on the money laundering charge until June 17, 1999, more than four months after his arrest on the cocaine charge in February. The Speedy Trial Act ("the Act") provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (emphasis added). The purpose of this rule "is to ensure that

---

[4] Even if, as Burgos argues, the evidence of his financial condition had been admissible only on the money laundering charge, that would not have been a basis for mandatory severance. See, e.g., United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. 1994) (noting that "[t]rial courts are granted discretion under Rule 14 to take whatever steps are deemed necessary to minimize prejudice" and affirming district court's denial of motion to sever where the district court instead chose to minimize the jury's exposure to the challenged evidence).

the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defend himself." United States v. Meade, 110 F.3d 190, 200 (1st Cir. 1997) (citations omitted).

As the government argues persuasively, the plain wording of the Act does not apply here. The Act imposes a 30-day time limit between an arrest and an indictment only where the arrest was "in connection with" the charges in the indictment. 18 U.S.C. § 3161(b). Burgos was arrested on the cocaine charge and does not dispute that he was indicted for that charge within the 30-day period prescribed by the Act. Thus, the money laundering count in the superseding indictment did not charge him with the crime for which he was arrested. Under these circumstances, there is no violation of the Act. See, e.g., Meade, 110 F.3d at 201 (finding no violation of the Act because the prosecution at issue, commenced with an indictment instead of an arrest, "simply did not trigger § 3161(b)'s arrest-to-indictment limitation"); Acha v. United States, 910 F.2d 28, 30 (1st Cir. 1990) (finding no violation of the Act and noting, "'[t]he right to a speedy trial on a charge is triggered by arrest only where the arrest is the beginning of continuing restraints on defendant's liberty imposed in

-16-

connection with the formal charge on which defendant is eventually tried.'") (quoting United States v. Stead, 745 F.2d 1170, 1172 (8th Cir. 1984)); United States v. Heldt, 745 F.2d 1275, 1280 (9th Cir. 1984).

## VI. Sentencing

Finally, Burgos argues that the district court erred in sentencing him to 108 months in prison in the absence of a jury finding as to the quantity of cocaine he attempted to possess. He points to the Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), to support this claim. Burgos says that "no detectable amount of cocaine was proven at trial" because O'Neil did not actually have cocaine in his possession when he met Burgos to complete their agreed-upon transaction. Thus, Burgos argues, the relevant quantity of cocaine for purposes of sentencing should be zero kilograms, not two kilograms as the district court found. Because Burgos did not argue this claim below, we review for plain error. See Mojica-Baez, 229 F.3d at 307. Finding no Apprendi error, we affirm.

Burgos does not have a successful Apprendi claim because his sentence of 108 months falls within the 20-year maximum sentence for the crime he committed. 21 U.S.C. § 846 provides for the same penalties for an attempt or conspiracy to

possess cocaine as for the substantive offense. Accordingly, 21 U.S.C. § 841(b)(1)(C), which sets a maximum sentence of 20 years, is the relevant statute for the sentence Burgos received. Burgos's sentence of 108 months does not even approach this statutory maximum for two kilograms of cocaine, a fact that Burgos concedes in his brief. Thus, <u>Apprendi</u> does not apply. <u>See</u> <u>United States</u> v. <u>Baltas</u>, 236 F.3d 27, 41 (1st Cir. 2001) ("[W]e hold that no constitutional error occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt.").

## VII. Conclusion

For the reasons we have explained, we discern no error in the proceedings below. We affirm Burgos's convictions and sentence.

**<u>Affirmed</u>**.