# United States Court of Appeals
## For the First Circuit

---

No. 06-2506

UNITED STATES OF AMERICA,

Appellee,

v.

MELVIN RICHARDSON,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

---

Before

Lipez and Howard, Circuit Judges,
and Gelpí,* District Judge.

---

Matthew V. Soares, with whom Melvin Richardson, pro se, was on brief, for appellant.
Vijay Shanker, Attorney, United States Department of Justice, with whom Paul Hart Smyth, Assistant United States Attorney, and Michael J. Sullivan, United States Attorney, were on brief, for appellee.

---

February 8, 2008

---

* Of the District of Puerto Rico, sitting by designation.

**GELPÍ**, **District Judge**.  On August 11, 2005, a federal grand jury in the District of Massachusetts returned a superseding indictment charging Melvin Richardson with four counts.  The first three counts charge Richardson with possession with the intent to distribute cocaine base (Counts One and Three) or cocaine (Count Two) in violation of 21 U.S.C. § 841(a)(1).  Count Four charges Richardson with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Counts One and Two arose out of a September 25, 2003 traffic stop.  Counts Three and Four arose out of an October 30, 2003 firearms-for-drugs deal in which Richardson provided the drugs in exchange for the firearms.  On March 31, 2006, a jury convicted Richardson on all four counts.  The district court sentenced him to a 216-month term of imprisonment on each count, all terms to be served concurrently.

Richardson now appeals his conviction and sentence.  He argues that the district court erred in refusing to sever Counts One and Two from Counts Three and Four and in admitting extrinsic evidence of an alleged prior inconsistent statement.  In a pro se brief, Richardson raises three additional arguments: (1) that the district court erroneously denied his motion to suppress the drugs seized during the September 25th inventory search of his vehicle; (2) that the district court erred in sentencing him as a career offender and as an armed career criminal; and (3) that the district court erroneously failed to determine whether sentencing entrapment

or sentencing factor manipulation had occurred.  After carefully reviewing the record, we affirm Richardson's conviction and sentence.

## I.       Background

We summarize here the relevant facts evidenced in the record, saving additional details for our analysis.  Throughout this opinion, we state the facts in the light most favorable to the verdict.  United States v. Fenton, 367 F.3d 14, 17 (1st Cir. 2004).

## A.       September 25, 2003 Arrest

On September 25, 2003, State Police Trooper Sean Maher observed a gray Nissan automobile rapidly accelerate while changing from the right to the left travel lane of northbound Route 91 in Northhampton, Massachusetts.  He followed the car for over half a mile and clocked its speed at between eighty and eighty-two miles per hour.

Maher pulled the vehicle over and asked Richardson, the vehicle's sole occupant, to produce his license and registration. Richardson could not produce a valid license because it had been revoked in April 2003.  Without a valid license, Richardson could not legally operate his vehicle, and his vehicle could not remain on the highway.  Maher, therefore, radioed for a tow truck to remove the vehicle.  He also radioed for assistance.

State Police Trooper David Nims arrived to assist.  After informing Richardson that his license had been revoked, which

Richardson acknowledged, the troopers ordered him to exit the vehicle. Richardson complied and waited on the highway guardrail.

Nims then began an inventory search of the vehicle. Upon entering the vehicle, Nims told Maher that it smelled of burnt marijuana. Richardson informed the troopers that he had smoked marijuana in the vehicle earlier that day and on other occasions. The troopers found several marijuana roaches in the ashtray. Nims discovered a plastic bag containing what appeared to be cocaine powder in smaller plastic baggies under the driver's side rear floor mat. Maher then lifted the passenger's side rear floor mat and located another plastic bag. That bag held several tied-off baggies containing what appeared to be cocaine base. Nims also found under the driver's side front floor mat a glass receptacle containing marijuana. The troopers found no other drug paraphernalia in the vehicle. Based on their training and experience, the troopers determined that the apparent cocaine and cocaine base were packaged for distribution.

The troopers placed Richardson under arrest and transported him to the police barracks. At the barracks, Richardson waived his Miranda rights. He volunteered that the substances were cocaine and cocaine base but denied that he was a drug dealer. He told the troopers that he was transporting the drugs to the Northampton Wal-Mart where he was supposed to meet a person from Vermont who would give him money for the drugs.

Richardson also stated that he transported drugs in this manner every other day.

Crime lab testing confirmed that one bag contained 5.02 grams of cocaine powder in nine twist-tied plastic bags and that the other bag contained 12.84 grams of cocaine base in twenty-nine twist-tied plastic bags. Expert witness John Baron, a Drug Enforcement Administration ("DEA") Special Agent, testified that, based on the quantity and packaging of the drugs, both the cocaine and cocaine base removed from Richardson's vehicle were consistent with retail distribution rather than personal use.

Richardson was charged with drug offenses in Massachusetts state court and released on bail.

B.      **October 30, 2003 Arrest**

In September 2003, Rashiid Mapp, a cooperating witness and paid confidential informant for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), told ATF Special Agent James Martin that he knew Richardson. Mapp described Richardson as a multi-ounce cocaine base dealer who frequently used a residence on Oak Grove Avenue in Springfield, Massachusetts to conduct his business. Mapp also told Martin that Richardson, in furtherance of his drug dealing, carried an older firearm that he wanted to replace. Based on Mapp's information, Martin began investigating Richardson. Martin learned that Richardson was a convicted felon and, consequently, was prohibited from carrying a firearm. On

October 14, 2003, Martin surveilled Richardson and saw him enter the Oak Grove Avenue residence.

Martin arranged for Mapp to present Richardson with the opportunity to exchange cocaine for two firearms supplied by a fictitious person from Vermont. On October 15, 2003, Mapp telephoned Martin; Mapp was with Richardson at the time he placed the call. During the conversation, the three men arranged a firearms-for-drugs deal between Martin and Richardson. Through Mapp, Richardson stated he was looking for two nine-millimeter handguns in exchange for an ounce of cocaine base. The tape recording of the October 15th phone call reflects that Richardson said: "Nines, get a couple of nines;" "He can get me the baby nine and a regular nine;" "I'm ready right now;" and "Tell him, listen, tell him to bring two nines. I'm gonna take both of them." Richardson then agreed with Martin to trade one ounce of cocaine base for two nine-millimeter handguns.

Martin arranged a meeting between Mapp, Richardson, and Special Agent Malcolm Van Alstyne of the ATF. Van Alstyne would play the role of the Vermont firearms supplier. The meeting, originally scheduled for October 23, 2003, eventually took place on October 30, 2003. During the meeting, Richardson gave Van Alstyne the cocaine base. Van Alstyne passed the two firearms to Richardson and then handed him a shirt in which to wrap them. Van Alstyne then exited the vehicle, ostensibly to put the cocaine base

in the trunk and to get bullets for Richardson. Richardson and Mapp also exited the vehicle. At that point, Van Alstyne gave the arrest signal, and agents arrested Richardson as he stood outside the vehicle holding the firearms. Agents also staged a mock arrest of Mapp in order to conceal his identity as a confidential informant. Crime lab testing later revealed that the narcotics Richardson gave to Van Alstyne contained 26.4 grams of cocaine base.

After the arrest, Martin and DEA Agent John Barron interviewed Richardson, who waived his Miranda rights and agreed to speak with the agents. Richardson told the agents that the firearms were for Mapp, not for him; he admitted that the cocaine base belonged to him. Richardson expressed a desire to cooperate with the government but stated that he could not reveal his drug supplier at that time. When asked again about the firearms, Richardson stated, "[T]hose guns were for ATF. They weren't for me."[1] Agents expressed disbelief in his statements and confronted him with the telephone recordings in which he talked about wanting the firearms.

At that point, Richardson became upset and evasive. The agents, therefore, decided to wait until a later time to do the interview and terminated the interrogation. The next day, Martin

---

[1]At the time, Richardson did not know Mapp's name. He knew him by his nickname, "ATF."

and DEA task force detective Norman Shink of the Springfield Police Department advised Richardson of his Miranda rights and resumed the interview. In an effort to cooperate with law enforcement, Richardson named four or five people involved in the drug trade in the area.

## C.    Pretrial

Prior to trial, Richardson moved to suppress the drug evidence seized during the September 25th traffic stop and to sever Counts One and Two from Counts Three and Four for trial purposes. Richardson contended that the September 25th search of his vehicle violated his Fourth Amendment rights. Regarding severance, he argued that joinder was improper and prejudicial. He stated that a joint trial would force him to cede his Fifth Amendment right against self-incrimination with respect to Counts One and Two in order to exercise his Sixth Amendment right to testify as to Counts Three and Four. Richardson offered an affidavit summarizing the testimony he had to give regarding his entrapment defense to Counts Three and Four. Following a hearing, the district court denied the motion to sever, concluding that "everything is going to come in at the trial in any event" and "severance of these charges wouldn't really accomplish anything." The district court also denied the motion to suppress, holding that the search Troopers Nims and Maher performed comported with the Massachusetts State Police inventory search policy and the Fourth Amendment.

**D.        Trial**

Trial on all four counts commenced on March 23, 2006. During the trial, the district court admitted two certified prior convictions into evidence as part of the government's case. The district court admitted these convictions to satisfy the predicate offense requirement for Count Four—the felon in possession of a firearm charge. DEA Agent Barron testified that one conviction was for assault and battery, which carries a potential penalty of more than one year of imprisonment in Massachusetts. The other conviction was for assault with a dangerous weapon (a knife), which also carries a potential penalty of more than one year of imprisonment in Massachusetts.[2]

Richardson presented his case through cross-examining the government's witnesses, presenting his own testimony, and producing his medical records. While on the stand, Richardson explained the factual details of his entrapment defense. He testified regarding his history of substance abuse, his relationship with Mapp, the specifics of the firearms-for-drugs deal, and how Mapp allegedly trapped him into participating in the deal. He testified that he just went along with Mapp's plan and that he had no need for the

_____

[2]A review of the records reveals no evidence that Richardson offered to stipulate to the existence of an earlier felony conviction. Cf. Old Chief v. United States, 519 U.S. 172, 190-91 (1997) (limiting government's ability to present proof regarding nature of prior conviction when defendant stipulates to fact of prior conviction).

firearms.  He explained that he had only pretended to be a "Big Willie," a high-level drug dealer, and insisted that the firearms were actually for Mapp.

The government permissibly sought to impeach Richardson's credibility by revealing three of his prior convictions.  The district court admitted the following three convictions for impeachment purposes: (1) a 1996 conviction for larceny from a building; (2) a 2001 conviction for possessing a dangerous weapon (a knife); and (3) a 1999 conviction for giving a false name.  The judge immediately provided a limiting instruction indicating that the jury should only consider these prior convictions for purposes of assessing Richardson's credibility.

The government also sought to impeach Richardson's testimony that he did not want the two firearms for himself.  The prosecutor offered a tape recording and written transcript of an October 22, 2003 telephone conversation.  Richardson's counsel objected because the judge had previously excluded this evidence.[3]  The judge eventually admitted the tape and transcript for impeachment purposes.  The judge admitted the evidence because: (1) the jury could interpret the vast majority of the conversation as inconsistent with Richardson's testimony; (2) admission of only

_____

[3]Prior to trial, Richardson filed a motion *in limine* seeking to exclude evidence of the October 22nd phone call.  The district granted the motion, reasoning that the government failed to presented sufficient evidence of Mapp's consent to the recording.

-10-

part of the tape would confuse the jury; and (3) parts of the tape included potentially exculpatory information. Immediately, the judge instructed the jury regarding the limited purpose for which it could consider the telephone call.

After the close of evidence, the judge instructed the jury. He once again explained to the jurors the limited purposes for which they could consider Richardson's predicate felonies, his other prior convictions, and the recording and transcript of the October 22nd telephone conversation. He repeatedly reminded the jury to consider each count separately. His presentation also included an instruction on the entrapment defense applicable to Counts Three and Four. The jury rejected Richardson's entrapment defense and returned a guilty verdict on each of the four counts.

## II. Analysis

We shall address Richardson's arguments *seriatim*.

## A. Severance

Richardson contends that the district court abused its discretion in denying his motion to sever Counts One and Two (the September 25th drug-related offenses) from Counts Three and Four (the October 30th drug and firearm-related offenses). Richardson asserts that the joint trial of the September 25th counts with the October 30th counts caused him substantial prejudice with regard to the earlier counts. He argues that joinder of the offenses prejudiced him because he was forced to testify to his detriment

-11-

regarding the September 25th charges. He also asserts that the joinder prejudiced him because the court admitted prior crime evidence that was admissible for some counts but inadmissible for others. He seeks a new trial on Counts One and Two only; he does not argue that the joinder prejudiced him with respect to Counts Three and Four. The government responds that Richardson suffered no prejudice because substantially the same evidence would have been admitted in both trials and severance would have contravened the interest in judicial economy and the conservation of prosecutorial resources.

Richardson does not contest the propriety of the initial joinder of all the offenses. See Fed. R. Crim. P. 8(a) (permitting joinder of offenses of same or similar character). Rather, he argues that Rule 14 of the Federal Rules of Criminal Procedure, which permits relief from prejudicial joinder, entitled him to severance of the joined counts. See Fed. R. Crim. P. 14(a). On appeal, we consider whether the denial of severance unduly prejudiced him.

The question of whether joinder of offenses unduly prejudices a defendant is addressed to the district court's sound discretion. United States v. Casas, 425 F.3d 23, 36 (1st Cir. 2005), cert. denied, 547 U.S. 1061 (2006); United States v. Alosa, 14 F.3d 693, 694-95 (1st Cir. 1994); see also United States v. Fenton, 367 F.3d 14, 22 (1st Cir. 2004) ("Severance on the ground

-12-

of undue prejudice is a judgment call and, thus, is a matter committed to the trier's informed discretion.") We reverse a refusal to sever only upon a showing of manifest abuse of discretion. United States v. Burgos, 254 F.3d 8, 13 (1st Cir. 2001); Alosa, 14 F.3d at 694-95. Rarely has this Court found an abuse of discretion sufficient to warrant reversal. See United States v. Diallo, 29 F.3d 23, 27 (1st Cir. 1994); United States v. Scivola, 766 F.2d 37, 41 (1st Cir. 1985). But see United States v. Jordan, 112 F.3d 14, 17 (1st Cir. 1997) (granting severance where joinder likely eviscerated defendant's planned defense).

Rule 14 provides: "If the joinder of offenses . . . for trial appears to prejudice a defendant . . ., the court *may* order separate trials of counts . . . ." Fed. R. Crim. P. 14(a) (emphasis added). We must affirm the district court's denial of a motion to sever unless the defendant makes a strong, see United Sates v. Edgar, 82 F.3d 499, 503 (1st Cir. 1996), and convincing, United States v. Vega Molina, 407 F.3d 511, 531 (1st Cir. 2005), showing of prejudice. Some prejudice results in almost every trial in which the court tries more than one offense together. Burgos, 254 F.3d at 13-14. Garden variety prejudice, however, will not, in and of itself, warrant severance. Id. at 14. The defendant must demonstrate that the prejudicial joinder likely deprived him of a fair trial. Id.; see also United States v. Baltas, 236 F.3d 27, 33

(1st Cir. 2001) (noting reversal only appropriate where defendant makes "strong showing of evident prejudice").

Three types of prejudice may result from trying a defendant for several offenses during the same trial:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissable in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

Jordan, 112 F.3d at 16.

With regards to the third type of prejudice, this Court has held that "a defendant *may* deserve a severance of counts where [he] makes 'a *convincing* showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.'" Alosa, 14 F.3d at 695 (emphasis added) (quoting Scivola, 766 F.2d at 43). The defendant must offer sufficient information so that the court can weigh "'the considerations of judicial economy' against the defendant's 'freedom to choose whether to testify' as to a particular charge." Id. (quoting Scivola, 766 F.2d at 43).

In this case, we conclude that Richardson has failed to make the strong showing of prejudice required to justify severance. Before the district court, Richardson attempted to frame his

-14-

severance argument in terms of the third type of prejudice.  He highlighted the "important testimony" he had to give regarding his entrapment defense, which applied only to Counts Three and Four. He explained that he could not present his entrapment defense without testifying regarding the details of the trap.  Richardson did not, however, adequately explain his "strong need" to refrain from testifying on Counts One and Two.  Before the district court, he did not articulate how his testimony might aid the government in obtaining a conviction on those charges.  Moreover, even with the benefit of hindsight, he does not argue on appeal that any of the testimony actually elicited from him at trial aided the government in obtaining convictions on Counts One and Two.

Instead, Richardson's argument before the district court, and renewed on appeal, was that he would be severely prejudiced by the admission of incriminating evidence that would not have otherwise been admissible in a severed trial at which he did not testify as to Counts One and Two.  Specifically, he argued that the evidence of the October 30th events, which form the basis for Counts Three and Four, would not have been admitted in such a severed trial on Counts One and Two.  This argument is based on a theory of evidentiary spillover, the second type of prejudice outlined in Jordan.  When such spillover serves as the ground for a defendant's severance motion, this Court has repeatedly refused to overrule a denial of severance if substantially the same

-15-

evidence would have been admitted in separate trials. See Burgos, 254 F.3d at 14; United States v. Stackpole, 811 F.2d 689, 693-94 (1st Cir. 1987); United States v. O'Connell, 703 F.2d 645, 649 (1st Cir. 1983); accord United States v. Freeman, 6 F.3d 586, 598 (9th Cir. 1993).

Here, the district court correctly concluded that, irrespective of whether Richardson testified, the conduct underlying the October 30th firearms-for-drugs deal would have been admissible to demonstrate, at a minimum, Richardson's knowledge of and intent to distribute drugs on September 25th. See Fed. R. Evid. 404(b) (allowing admission of other bad acts evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). Counts One and Two charged Richardson with possessing cocaine base and cocaine, respectively, with the intent to distribute on September 25th. He defended Counts One and Two by claiming that he lacked the requisite intent to distribute; he testified that he was merely driving somewhere with the drugs to get high with friends. Evidence that, fewer than five weeks after his September 25th arrest, Richardson provided the cocaine base for and received the weapons in the firearms-for-drugs deal rebuts his lack of intent defense. See United States v. Landrau-Lopez, 444 F.3d 19, 24 (1st Cir. 2006) (holding testimony regarding prior drug-related activities probative of knowledge and intent); United States v.

Nickens, 955 F.2d 112, 124-25 (1st Cir. 1992) (deeming evidence of prior drug convictions admissible to show knowledge and intent); see also United States v. Acosta, 67 F.3d 334, 339 (1st Cir. 1995) (noting drug dealing often associated with access to weapons); cf. United States v. White, 356 F.3d 865, 870 (8th Cir. 2004) (recognizing correlation between drug dealing and weapons); United States v. Hopkins, 310 F.3d 145, 151 (4th Cir. 2002) (accepting expert testimony describing possession of small caliber weapon as indicia of drug dealing); United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999) (noting admission of handguns into evidence in drug cases consistently upheld as relevant to issues raised by such cases). To defend himself against Count One, Richardson denied that the twenty-nine baggies found under his rear floor mat on September 25th contained cocaine base. He testified that he believed the substance to be rock cocaine. The fact that Richardson knowingly provided cocaine base for the October 30th transaction is probative of his knowledge that the twenty-nine baggies seized on September 25th contained cocaine base.[4] See Landrau-Lopez, 444 F.3d at 24; Nickens, 955 F.2d at 124-25.

Rule 404(b) would also have permitted admission of the conduct underlying the September 25th drug counts in a separate trial on Counts Three and Four to prove Richardson's knowledge of

---

[4]Laboratory testing revealed that the twenty-nine baggies, in fact, contained cocaine base.

and intent to distribute drugs and to rebut his entrapment defense. See Fed. R. Evid. 404(b); see also United States v. Smith, 292 F.3d 90, 99-100 (1st Cir. 2002) (deeming evidence of drug dealing relevant to show motive or knowing possession of a firearm); Acosta, 67 F.3d at 339 (recognizing probative value of prior drug-related offenses to prove predisposition to possess firearm).

Additionally, we note that the district judge limited any prejudice that might result from admission of other crime evidence by instructing the jury to consider the evidence separately as to each count. See United States v. Baltas, 236 F.3d 27, 34 (1st Cir. 2001) (noting appropriate limiting instruction provides adequate safeguard against evidentiary spillover prejudice).

On appeal, Richardson raises an additional prejudice argument, which he failed to articulate before the district court. He avers that he suffered prejudice because the jury heard evidence regarding his prior criminal convictions. Richardson specifically argues that this evidence, used to prove the "felon" element of Count Four and to impeach his credibility, would have been inadmissible against him in a separate trial on Counts One and Two in which he chose not to testify.[5]

---

[5]We note that the government presented two felony convictions as a basis for Count Four when only one was necessary. Richardson, however, did not argue in the district court, nor before us, that this aggravated any prejudice towards him. We will not address issues not properly raised. Esso Standard Oil Co. v. Rodriguez-Perez, 455 F.3d 1, 6 (1st Cir. 2006), cert. denied, 127 S. Ct. 960 (2007); United States v. Marshall, 109 F.3d 94, 99 (1st Cir. 1997).

Because Richardson failed to articulate this argument before the district court, he has not properly preserved it. See Scivola, 766 F.2d at 43 (holding that defendant has burden of presenting district court with "enough information" to demonstrate prejudice); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks and citation omitted)).  Accordingly, we review only for plain error the district court's failure to order severance on this ground sua sponte. See Fed. R. Crim. P. 52(b); see also United States v. Thomann, 609 F.2d 560, 564 (1st Cir. 1979).  We find no such error for two reasons.

First, the district court took appropriate measures to limit any prejudice by giving thorough and accurate limiting instructions.  See Burgos, 254 F.3d at 15 n.4 (noting flexibility Rule 14 grants district court to minimize prejudice); see also Baltas, 236 F.3d at 34 (acknowledging jury instructions as appropriate method of minimizing prejudice).  During the presentation of evidence and during the closing charge, the judge repeatedly instructed the jury regarding the limited purposes for which it could consider all the prior convictions.

Second, the government presented an exceedingly strong case with respect to Counts One and Two.  We doubt that the admission of the prior conviction evidence influenced the verdicts

on those counts.  See United States v. Adams, 375 F.3d 108, 113 (1st Cir. 2004) (affirming conviction notwithstanding evidentiary error where government presented overpowering and untainted evidence of guilt); United States v. Collins, 60 F.3d 4, 7-8 (1st Cir. 1995) (deeming error non-prejudicial where court gave appropriate limiting instructions and government presented overwhelming evidence of guilt).

Richardson has not made the strong showing of unfair prejudice required to warrant severance.  Having thoroughly reviewed the record in this case and the applicable case law, we are satisfied that the district court did not manifestly abuse its discretion in denying Richardson's motion for severance.

**B.        Prior Inconsistent Statement**

Richardson contends that the district court erroneously admitted for impeachment purposes a suppressed tape recording and transcript of a telephone conversation between Richardson and Mapp. The court erred in admitting the telephone conversation, he argues, because the government failed to make a sufficient showing that Richardson's trial testimony actually conflicted with statements he made during the telephone conversation.  The government responds that Richardson's testimony directly conflicted with his phone statements and that even if error occurred, it was harmless.

In an October 22, 2003 telephone conversation with Mapp, Richardson stated, "I want it" and "I'll take it," in reference to

a firearm.  During trial, Richardson repeatedly testified that he took possession of the firearms temporarily as a middleman before handing them over to Mapp.  He denied taking possession of the firearms for his personal use.  The government sought to cross-examine Richardson about the inconsistencies between his trial testimony and his statements during the October 22nd telephone conversation.  The district court agreed that Richardson's telephone statements and trial testimony were inconsistent and permitted the government to impeach him with his prior statements.  On redirect, Richardson had the opportunity to clarify the meaning of his October 22nd statements to Mapp.

We review the district court's admission of Richardson's prior statement for abuse of discretion.  United States v. Garcia, 452 F.3d 36, 38 (1st Cir. 2006) (noting appeals court typically reviews evidentiary rulings for abuse of discretion).

The government generally may use otherwise inadmissible evidence in order to impeach a testifying criminal defendant.  See United States v. Morla-Trinidad, 100 F.3d 1, 4 (1st Cir. 1996); Williams v. Poulos, 11 F.3d 271, 287 (1st Cir. 1993); see also Walder v. United States, 347 U.S. 62, 64-65 (1954) (holding illegally obtained evidence admissible for impeachment purposes).  One method of impeachment is through the use of a prior inconsistent statement.  See Fed. R. Evid. 613; United States v. Meserve, 271 F.3d 314, 320 (1st Cir. 2001).  Rule 613 "applies

when two statements, one made at trial and one made previously, are irreconcilably at odds." United States v. Winchenbach, 197 F.3d 548, 558 (1st Cir. 1999). Statements, however, need not be directly contradictory in order to be deemed inconsistent. Udemba v. Nicoli, 237 F.3d 8, 18 (1st Cir. 2001); see also United States v. Winter, 663 F.2d 1120, 1154 (1st Cir. 1981) (admitting statement despite finding it "ambiguous at best"); United States v. Barrett, 539 F.2d 244, 254 (1st Cir. 1976) (noting contradiction need not be "in plain terms" and requiring "some indication" that statement differed from trial testimony). It lies within the sound discretion of the district court to determine whether an inconsistency exists. United States v. DeSimone, 488 F.3d 561, 572 (1st Cir. 2007); Udemba, 237 F.3d at 18.

Richardson posits that the judge should not have admitted the telephone conversation because his trial testimony does not "unambiguously" conflict with his statements in the telephone conversation. We can find no case holding that a prior statement must "unambiguously" conflict with the trial testimony. Moreover, First Circuit precedent makes clear that statements need not be directly contradictory to qualify as inconsistent. See, e.g., Udemba, 237 F.3d at 18. The statements at issue in this case, fairly read, are sufficiently at odds to be deemed inconsistent. Accordingly, the district court did not abuse its sound discretion in admitting the telephone conversation.

## C.    Pro Se Arguments

In his pro se brief, Richardson raises three additional and unpersuasive arguments.  First, he challenges the district court's denial of his motion to suppress the drugs seized during the September 25, 2003 inventory search of his vehicle.  Richardson contends that police impermissibly searched under the floor mats during their vehicle inventory search.  The Fourth Amendment permits a warrantless inventory search if the search is carried out pursuant to a standardized policy.  See Florida v. Wells, 495 U.S. 1, 3-4 (1990); see also United States v. Hawkins, 279 F.3d 83, 85-86 (1st Cir. 2002) (noting written policy not required and accepting officers' testimony as proof of contours of policy).  Troopers Maher and Nims testified that the Massachusetts State Police written inventory policy requires a search of all interior areas of a vehicle, including floor areas and all unlocked containers; that the floor area includes the area under floor mats; and that officers usually look under floor mats during an inventory search.  Richardson offered no evidence to rebut Nims's and Maher's testimony.  We conclude, therefore, that the district court did not commit clear error in finding that the relevant inventory search policy permitted the troopers to search under the floor mats.  See Hawkins, 279 F.3d at 85-86 (reviewing for clear error district court's determination regarding whether law enforcement officials conducted inventory search pursuant to standardized procedures).

Second, Richardson argues that the district court violated his Sixth Amendment right to trial by jury by applying career offender and armed career criminal enhancements to his sentence without requiring the government to prove his prior convictions to a jury beyond a reasonable doubt. Supreme Court precedent forecloses Richardson's argument. The Supreme Court has held that, for sentencing enhancement purposes, the government need not prove to a jury beyond a reasonable doubt the fact of a prior conviction. See Almendarez-Torres v. United States, 523 U.S. 224, 248 (1998); see also United States v. Duval, 496 F.3d 64, 80 (1st Cir. 2007) (holding failure to plead and prove prior convictions to jury does not invalidate, on statutory or constitutional grounds, armed career criminal sentences), cert. denied, 76 U.S.L.W. 3347 (U.S. Jan. 7, 2008) (No. 07-7968). This court remains committed to follow Almendarez-Torres unless it is expressly overruled. See, e.g., United States v. Palacios, 492 F.3d 39, 44 (1st Cir. 2007), cert. denied, 128 S. Ct. 547 (2007); United States v. Godin, 489 F.3d 431, 434 & n.3 (1st Cir. 2007); United States v. Roberson, 459 F.3d 39, 55 n.11 (1st Cir. 2006), cert. denied, 127 S. Ct. 1261 (2007); United States v. Jimenez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (en banc), overruled on other grounds by United States v. Rita, 127 S. Ct. 2456 (2007); see also Shepard v. United States, 544 U.S. 13, 24-26 (2005) (acknowledging continuing validity of

<u>Almendarez-Torres</u> holding).  Richardson presents no basis on which to disturb his sentence.

Finally, Richardson claims that the government committed sentencing entrapment or sentencing factor manipulation by ensuring the firearms he attempted to acquire had traveled in interstate commerce, thereby exposing him to federal prosecution.  He asserts that this alleged entrapment or manipulation entitled him to a downward departure under the federal sentencing guidelines.  <u>See</u> U.S.S.G. § 2D1.1 cmt. nn. 12 & 14.[6]

Richardson waived his downward departure argument by failing to raise it before the district court.  <u>See</u> <u>United States</u> v. <u>Delgado</u>, 288 F.3d 49, 57 (1st Cir. 2002) (declining to consider departure claim not raised in district court); <u>see also</u> <u>United States</u> v. <u>Piper</u>, 35 F.3d 611, 620 n.6 (1st Cir. 1994) ("[A]rguments not squarely presented to the sentencing court cannot debut as of right in an appellate venue.").  Even if he properly raised his downward departure argument, the district court's discretionary refusal to depart is "[generally] unreviewable" unless based on an erroneous understanding that it lacks legal authority to consider a departure or some other error of law.  <u>Godin</u>, 489 F.3d at 437 (noting appeals court lacks jurisdiction to review discretionary

_____

[6]We assume without deciding that application notes 12 and 14, which pertain to drug offenses, apply to analogous firearms-related offenses.  <u>See</u> <u>United States</u> v. <u>Montoya</u>, 62 F.3d 1, 5 (1st Cir. 1995) (acknowledging potential applicability of application note 14 in analogous circumstance not explicitly mentioned in note).

decision not to depart unless district court committed legal error); United States v. Sanchez, 354 F.3d 70, 76 (1st Cir. 2004) (recognizing limited exceptions to rule prohibiting review of sentencing court's departure decisions); United States v. Mejia, 309 F.3d 67, 70 (1st Cir. 2002) ("[W]e review de novo a district court's determination of its authority to depart, but lack jurisdiction to review a discretionary decision not to depart from the Sentencing Guidelines."). Richardson does not and cannot argue that the district court based its decision on a belief that it lacked legal authority to depart or otherwise committed an error of law. The district court's refusal to downwardly depart, therefore, is unreviewable.[7]

Richardson's more general sentencing manipulation claim, which we may review, fails. See Montoya, 62 F.3d at 4 ("[W]here a defendant wants to argue that there has occurred a sentencing manipulation amounting to 'extraordinary misconduct,' we think that the claim need not be limited to a request for a discretionary departure, that it applies to statutory mandatory minimums as well as to guideline ranges, and that it is subject to appellate review.") Sentencing factor manipulation occurs when authorities

---

[7]The Supreme Court's decision in United States v. Booker, 543 U.S. 220, 261 (2005), also forecloses Richardson's challenge to his sentence. We review a sentence under the now advisory sentencing guidelines for reasonableness. See Jimenez-Beltre, 440 F.3d at 519. We cannot conclude that Richardson's already below guidelines sentence is unreasonable.

"venture outside the scope of legitimate investigation and engage in extraordinary misconduct that improperly enlarges the scope or scale of the crime."[8]  United States v. Sanchez-Berrios, 424 F.3d 65, 78-79 (1st Cir. 2005) (quoting United States v. Barbour, 393 F.3d 82, 86 (1st Cir. 2004)), cert. denied, 546 U.S. 1125 (2006). The record contains no evidence that the parties agreed upon the source of the firearms as part of the deal.  The record is also devoid of evidence that the government overbore Richardson's will to purchase only local firearms and forced him to purchase firearms that had traveled in interstate commerce.  Accordingly, Richardson has failed to show that the government engaged in extreme misconduct constituting sentencing manipulation.

**III.    Conclusion**

For the reasons explained above, we affirm Richardson's conviction and sentence.

**Affirmed**.

---

[8]The "extraordinary misconduct" standard is very high "because we are talking about a reduction at sentencing, in the teeth of a statute or guideline approved by Congress, for a defendant who did not raise or did not prevail upon an entrapment defense at trial." Montoya, 62 F.3d at 4.  Sentencing factor manipulation is present only in an "extreme and unusual case," for example a case involving "outrageous or intolerable pressure" or "illegitimate motive on the part of the agents."  Id.